[No. C004651. Third Dist. Dec. 3, 1990.]

DOCTORS' COMPANY INSURANCE SERVICES, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
STACY NICHOLE MARCHAND, a Minor, etc., et al., Real Parties
in Interest.

COUNSEL

Bonne, Jones, Bridges, Mueller & O'Keefe, H. Gilbert Jones, Christopher B. Marshall, Donahue & Callaham, Stephen J. Mackey, Greines, Martin, Stein & Richland and Alan G. Martin for Petitioner.

No appearance for Respondent.

Bolling, Walter & Gawthrop, T. D. Bolling, Jr., Marjorie E. Manning and George E. Murphy for Real Parties in Interest.

OPINION

SIMS, J.—Plaintiffs, minor Stacy Nicole Marchand and her parents Diane and Roderick Marchand, filed this action against defendant the Doctors' Company Insurance Services doing business as the Doctors' Company (Doctors'), alleging Insurance Code violations in connection with Doctors' handling of the Marchands' prior medical malpractice action against Doctors' insured, Dr. Raymond Blain. The complaint alleged Doctors' (and retained counsel) misrepresented the admitted liability of its insured by advising Dr. Blain and another doctor to lie at their depositions. After its demurrer to the second amended complaint was overruled, Doctors' petitioned for a writ of mandate, which we initially denied. Upon direction of the California Supreme Court, we have issued an alternative writ in light of (inter alia) *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58]. We conclude the complaint is barred by *Moradi-Shalal* and the litigation privilege of Civil Code section 47, subdivision 2 (hereafter section (47(2)). Therefore, we will issue a peremptory writ directing the trial court to enter an order sustaining Doctors' demurrer without leave to amend.[1]

FACTUAL AND PROCEDURAL BACKGROUND

 Since this case arises on demurrer, "we assume the truth of all properly pleaded material allegations of the complaint [citations] and give

---

[1] Our disposition of this petition renders moot Doctors' petition for writ of mandate (The Doctors' Company v. Marchand (C004652)) concerning discovery issues in the same lawsuit.

Additionally, we note that in *Blain* v. *The Doctor's Co.* (1990) 222 Cal.App.3d 1048 [272 Cal.Rptr. 250] we held the doctrine of unclean hands precluded Blain's action for legal malpractice predicated upon injuries caused when Blain followed the advice of his lawyer to lie at his deposition. We expressly declined to resolve Doctors' claim that Blain's action was barred by section 47(2). (*Id.* at p. 1057.)

the complaint a reasonable interpretation by reading it as a whole and its parts in their context [citation]." (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 210 [266 Cal.Rptr. 638, 786 P.2d 365].)

The pleading at issue is the second amended complaint, filed March 24, 1988, from which the following facts are derived. The first cause of action alleges violation of Insurance Code section 790.03. ██ ██ ██ ██ A second cause of action alleges a conspiracy to violate the Insurance Code by Doctors' and others, including Dr. Achtel (a defendant in the malpractice case) and Norcal (Dr. Achtel's insurer).[2] Only Doctors' is a named defendant in this action.

In March 1982, minor Stacy Marchand suffered brain damage while under Dr. Blain's medical care. In April 1983, the Marchands filed a medical malpractice action against several defendants including Dr. Blain.

Dr. Blain knew he had been negligent in his care and treatment of Stacy and knew his negligence had proximately caused her injuries. Dr. Blain admitted his liability to Doctors', which provided his malpractice insurance with policy limits of $1 million. Nevertheless, Doctors' failed to make any attempt to settle the Marchands' claims for more than three years after the malpractice action was filed. Instead, Doctors' "embarked on a course of conduct designed to conceal the admitted culpability of Dr. Blain and misrepresented to the plaintiffs and others that [Blain] was not at fault, all for the purpose of avoiding its contractual and statutory obligation to make a good faith attempt to effectuate a prompt, fair and equitable settlement of the plaintiffs' claim."

The specific allegations of misconduct are the following: "Prior to and during the deposition of Dr. Blaine [*sic*] in Case No. 310595, defendant DOCTORS, through its authorized employees, agents and the attorney it retained to represent Dr. Blaine in Case No. 310595, advised Dr. Blaine to *not* tell the truth in his deposition and to avoid giving information concerning his recollection of conversations with Dr. Achtel, which would, if disclosed, establish the liability of Achtel. Defendant DOCTORS, through its authorized employees, agents and the attorney it retained to represent Dr. Blaine in Case No. 310595, on several occasions during Dr. Blaine's deposition in said action, halted the deposition, and in private conversations with Blaine advised him to answer questions in a specific manner so as to further the unlawful conspiracy. DOCTORS, through its employees, agents and the attorney it retained to represent Dr. Blaine in Case No. 310595, advised

[2] No cause of action exists for conspiracy itself; the pleaded facts must show conduct which, without the conspiracy, would give rise to a cause of action. (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063].)

Blaine that if he would follow the aforesaid instructions, Achtel would avoid giving testimony in his deposition that would establish Dr. Blaine's liability, but if Blaine failed to follow said instructions, Achtel would give testimony in his deposition which would establish Blaine's liability. The above-described coercion exerted upon Dr. Blaine by DOCTORS and its co-conspirators resulted in Blaine giving inaccurate and misleading testimony in his deposition in Case No. 310595.

". . . One or more members of the aforesaid conspiracy advised Dr. Achtel to *not* tell the truth in his deposition and to avoid giving information concerning his recollection of conversations with Dr. Blaine and others, which would, if disclosed, establish the liability of Blaine. Achtel was advised by one or more members of the conspiracy that if he would follow said advice, Blaine would avoid giving testimony in his deposition that would establish Achtel's liability, but if he failed to follow said advice Blaine would give testimony in his deposition which would establish Achtel's liability. Achtel agreed to follow said advice, and in his deposition in Case No. 310595 he failed to disclose, when asked, that prior to commencement of Case No. 310595 he had stated to DIANE MARCHAND and other persons that Blaine had committed malpractice or "screwed up" in his care and treatment of STACY MARCHAND." (Original italics.)

After Dr. Blain's deposition, the Marchands stated their intent to amend their malpractice complaint to add a fraud claim. Dr. Blain then retained independent counsel, who assertedly demanded that Doctors' settle the claim on Dr. Blain's behalf. Doctors' failed to do so for approximately one year, then unsuccessfully attempted to condition settlement on the Marchands' waiving any bad faith claims they had against Doctors'.

A settlement was ultimately reached in December 1986, whereby Doctors' paid the $1 million policy limits to the Marchands in exchange for dismissal of Dr. Blain from the malpractice action.[3]

 ██ ██ The pleading alleged Doctors' conduct violated its contractual and statutory obligations under Insurance Code section 790.03.[4] The Marchands' damages included loss of interest on the settlement proceeds, reduction of benefits due to increase in the cost of the annuity purchased with the settlement proceeds, and emotional distress.

---

[3] At the Marchands' request, filed February 28, 1990, we take judicial notice that a dismissal with prejudice of the entire malpractice action was filed on July 21, 1989. (Evid. Code, § 452, subd. (d).)

[4] A demurrer does not admit contentions or conclusions of law. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Doctors' demurred to the second amended complaint on the grounds, inter alia, of failure to state facts sufficient to constitute a cause of action and failure to allege a cognizable claim for conspiracy.

After the trial court issued its order overruling the demurrer, Doctors' petitioned this court for a writ of mandate to compel the trial court to sustain the demurrer. It submitted the following grounds for the petition: (1) The entire action should be dismissed because the allegation that Dr. Blain believed himself at fault did not satisfy the requirement of *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] of an antecedent binding determination or admission of liability; (2) the conspiracy claim offended due process concerns and the litigation privilege of section 47(2); and (3) this action could not proceed before conclusion of the underlying action against Doctors' alleged co-conspirators.

We denied the petition for writ of mandate.

Thereafter, the California Supreme Court issued the following: "The above matter is transferred to the Court of Appeal, Third Appellate District, with directions to vacate its order denying mandate and to issue an alternative writ to be heard before that court when to [*sic*] proceeding is ordered on calendar. (See Moradi-Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287, 313; Doctors Co. v. Superior Court (1989) 49 Cal.3d 39;[5] and Palma v. Industrial Fasteners (1984) 36 Cal.3d 171.)"

We issued an alternative writ.

DISCUSSION

I. *Moradi-Shalal*

▇ ▇▇▇▇ The Marchands "acknowledge that as presently pled, their complaint alleging violation of California Insurance Code section 790.03 is barred by the Supreme Court decision in *Moradi-Shalal* v. *Fireman's Fund Insurance Companies, supra,* 46 Cal.3d 287."[6] ▇▇ However, they cite

---

[5] *Doctors Co.* v. *Superior Court* (1989) 49 Cal.3d 39 [260 Cal.Rptr. 183, 775 P.2d 508] (not involving this lawsuit) held non-insurer defendants (attorney and expert witness), as agents of insurer, were not liable for conspiracy to violate a duty peculiar to the insurer.

[6] *Moradi-Shalal*'s holding that the Unfair Practices Act (Ins. Code, § 790 et. seq.) does not give rise to a private right of action is prospective only. (46 Cal.3d at p. 305, overruling *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880.) However, *Moradi-Shalal* also held that for lawsuits filed before its finality (such as this case), a final judicial determination of the insured's liability is a condition precedent to an Insurance Code section 790.03 action against the insurer. (*Moradi-Shalal, supra,* 46 Cal.3d at p. 313.) Since a *Royal Globe* action is predi-

*Moradi-Shalal*'s caveat that, "the courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud [and] infliction of emotional distress, . . ." (*Id.* at pp. 304-305.)

The Marchands seek leave to amend their pleading to assert common law claims. However, they do not represent that any additional *facts* can be alleged. Rather, they assert that the facts as presently pled state a cause of action under theories of (1) intentional interference with prospective economic advantage; (2) intentional spoliation of evidence; and (3) intentional infliction of emotional distress. Consequently, their request for leave to amend adds nothing to our determination of the viability of their action, which must stand or fall on the facts alleged in the second amended complaint. (See *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497 [86 Cal.Rptr. 88, 468 P.2d 216].)

■ *Lee* v. *Travelers Companies* (1988) 205 Cal.App.3d 691 [252 Cal.Rptr. 468] held a plaintiff cannot avoid *Moradi-Shalal* by relabeling the theory, where the material allegations assert nothing more than an insurer's violation of its statutory duties. (*Id.* at pp. 694-695 [insurer with knowledge of insured's liability refused to settle until case assigned to trial]; see also *Safeco Ins. Co.* v. *Superior Court* (1990) 216 Cal.App.3d 1491 [265 Cal.Rptr. 585] [labeling insurer's conduct as unfair business practices violating Business and Professions Code "provides no toehold for scaling the barrier of *Moradi-Shalal*"].)

Nevertheless, as suggested in *Lee*, an action may lie if based on outrageous conduct beyond mere violation of the insurer's duties. (*Lee* v. *Travelers Companies, supra*, 205 Cal.App.3d at p. 695.) Thus, for example, a cause of action for intentional infliction of emotional distress may lie where an insurer sends harassing or deceptive letters in an effort to induce a third party claimant to settle. (See *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394-396 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

■ It thus appears the facts pleaded in the Marchands' complaint avoid the *Moradi-Shalal* bar, because advising an insured to lie in a deposition may constitute intentional outrageous conduct going beyond mere

---

cated on liability for failure to settle when the insured's liability has become reasonably clear, an essential preliminary inquiry in any *Royal Globe* action is whether the insured was liable in actuality for the third party claimant's injury. (*Moradi-Shalal*, 46 Cal.3d at pp. 306-311.) The question of the insured's liability for the underlying injury cannot be litigated in the unfair practices action against the insurer. Thus, *Moradi-Shalal* held a settlement (as in this case) is an insufficient conclusion of the underlying action (*id.* at p. 306), and an admission of liability does not suffice to determine the insured's liability (*id.* at p. 310).

violation of the insured's duties under the Insurance Code and causing foreseeable injury to plaintiffs. Nevertheless, there is another obstacle to the lawsuit—the litigation privilege of section 47(2).

## II. *Section 47(2)*

The conduct of which the Marchands complain consists of communications made in the course of defending Dr. Blain in the prior malpractice action.

Section 47(2) provides in part that "A privileged publication . . . is one made . . . [¶] 2. In any . . . (2) judicial proceeding, . . ."

Our Supreme Court has recently delineated the scope of the section 47(2) privilege. In *Silberg* v. *Anderson, supra*, 50 Cal.3d 205, a former husband filed suit against the attorney who had represented his wife in dissolution proceedings. The attorney had recommended a psychologist to evaluate the parties in the dissolution proceedings for the purpose of determining custody and visitation. Contrary to her representations, the attorney had a preexisting relationship with the psychologist which she assertedly used to influence him to produce a biased, defamatory and inaccurate report. The complaint alleged breach of contract, negligence and intentional tort. The attorney demurred to the complaint on the ground her statements during the dissolution litigation were privileged under section 47(2).

The Supreme Court held the action was barred by section 47(2). "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 212.) The stipulation to retain a psychologist in the dissolution proceeding and the discussion as to which psychologist to retain met these criteria.

*Silberg* explained that section 47(2) affords litigants the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. (50 Cal.3d at p. 213.) "For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings. To allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system." (*Id.* at p. 214.) "Given the importance to our justice system of ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous

advocacy, giving finality to judgments, and avoiding unending litigation, it is not surprising that section 47(2), the litigation privilege, has been referred to as 'the backbone to an effective and smoothly operating judicial system.'" (*Id.* at pp. 214-215.)

To effectuate its vital purposes, the litigation privilege is held to be absolute. (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 215.) Although originally enacted to bar claims of defamation, the privilege is now held to apply to almost all torts, including intentional infliction of emotional distress and interference with prospective economic advantage. (*Id.* at pp. 212, 216.) The only exception to the privilege has been for malicious prosecution suits, which are permitted because the policy of encouraging free access to the courts is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied. (*Id.* at p. 216.) Furthermore, "the privilege is now held applicable to any communication, whether or not it amounts to a publication, [citations] . . . required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.]" (*Id.* at p. 212.)

*Silberg* rejected a requirement, imposed by some courts of appeal, that the communication must have been made in the "interest of justice" to qualify for section 47(2) protection. (50 Cal.3d at p. 219, disapproving *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 826 [106 Cal.Rptr. 718].) "A rule that an otherwise privileged communication is not privileged under section 47(2) unless made for the purpose of promoting the 'interest of justice' is wholly inconsistent with the numerous cases in which fraudulent communications or perjured testimony have nevertheless been held privileged. [Citations.] . . . [E]ndorsement of the 'interest of justice' requirement would be tantamount to the exclusion of *all* tortious publications from the privilege, because tortious conduct is invariably inimical to the 'interest of justice.' Thus, the exception would subsume the rule." (*Id.* at p. 218, original italics.)

The Supreme Court recognized that justice is not served where an attorney seeks to deceive a party into relying on an expert by misrepresenting the expert's impartiality and that application of the privilege sometimes results in real injuries going uncompensated. (*Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 213, 218.) However, "the evils inherent in permitting derivative tort actions based on communications during the trial of a previous action are . . . far more destructive to the administration of justice, than an occasional 'unfair' result." (*Id.* at p. 213.) Furthermore, other remedies exist to help deter injurious publications during litigation, e.g., criminal prosecution for

perjury or subornation of perjury, and State Bar disciplinary proceedings. (*Id.* at pp. 218-219.)

A. *The Privilege Applies to an Insurer Who Provides a Defense to a Party*

 The Marchands argue insurers of litigants are not "participants authorized by law" to whom the privilege applies.

Although originally limited to witnesses, since 1874 section 47(2) has placed no limitation on whom the privilege protects. (Code amends. 1873-1874, ch. 612, § 11, p. 184.) "The language of [section 47(2)] is . . . broad and unrestricted in its terms, . . ." (*Gosewisch* v. *Doran* (1911) 161 Cal. 511, 514 [119 P. 656].) *Silberg* mentions, "The usual formulation . . . that the privilege applies to any communication . . . by litigants or other participants authorized by law" in judicial proceedings. (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 212.) However, *Silberg* did not discuss whether insurers of litigants are such participants, since it was not an issue in the case. It has been noted, however, that the privilege should not be confined to the types of persons (judges, lawyers, witnesses, jurors) identified in the Restatement of Torts as qualified to assert the privilege at common law. (*ITT Telecom Products Corp.* v. *Dooley* (1989) 214 Cal.App.3d 307, 316 [262 Cal.Rptr. 773] [§ 47(2) applies to non-witness expert consultants to litigants].)

We conclude that where, as here, the insurer provides a defense for a party, the realities of the insurer's role in the litigation dictate that the insurer be treated as an authorized participant in judicial proceedings for purposes of section 47(2).

 Thus, in another context, we have noted that, "In the insured-insurer relationship, the attorney characteristically is engaged and paid by the carrier to defend the insured. The insured and the insurer have certain obligations each to the other, . . . arising from the insurance contract. Both the insured and the carrier have a common interest in defeating or settling the third party's claim. If the matter reaches litigation, the attorney appears of record for the insured and at all times represents him in terms measured by the extent of his employment.

"In such a situation, the attorney has two clients whose primary, overlapping and common interest is the speedy and successful resolution of the claim and litigation. Conceptually, each member of the trio, attorney, client-insured, and client-insurer has corresponding rights and obligations founded largely on contract, and as to the attorney, by the Rules of Professional Conduct as well. The three parties may be viewed as a loose partner-

ship, coalition or alliance directed toward a common goal, sharing a common purpose which lasts during the pendency of the claim or litigation against the insured. Communications are routinely exchanged between them relating to the joint and common purpose—the successful defense and resolution of the claim. Insured, carrier, and attorney, together form an entity—the defense team—arising from the obligations to defend and to cooperate, imposed by contract and professional duty. This entity may be conceived as comprising a unitary whole with intramural relationships and reciprocal obligations and duties each to the other quite separate and apart from the extramural relations with third parties or with the world at large. Together, the team occupies one side of the litigating arena." (*American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 591-592 [113 Cal.Rptr. 561]; see also *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].)

■ As those holding a vital stake in the progress and outcome of litigation, insurers providing a defense are entitled to the protections of the privilege when they communicate with other participants in the litigation. We have no doubt that a contrary conclusion would foster much meritless litigation and would make it supremely difficult for insurers to communicate candidly with counsel and their insureds about litigation. In short, a contrary conclusion would undermine the fundamental policies protected by section 47(2). (See *Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 213-214.)

At least one other court has reached this conclusion. In *Petty* v. *General Accident Fire & Life Assurance Corp.* (3d Cir. 1966) 365 F.2d 419, the court held that statements made by a nonparty insurer at a settlement conference were subject to an absolute privilege from defamation claims. The court said, "In an effort to place the defendants' conduct outside of this normal scope of the [absolute] immunity, the appellant urges that the insurance companies which caused the settlement were not parties to the litigation. But that is true only in a strictly formal sense. [Plaintiff's] insurance policy authorized his insurers to conduct his defense and made it their contractual duty to do so." (*Id.* at p. 421.)

The only authority cited by the Marchands is *Bradley* v. *Hartford Acc. & Indem. Co., supra,* 30 Cal.App.3d 818.

In *Bradley, supra,* attorneys of record in a prior personal injury lawsuit brought a defamation action against the insurer of a defendant in the prior suit. The complaint alleged the insurer had manufactured evidence and suborned perjury by inducing a third party falsely to charge the attorneys

with colluding to dismiss another defendant in the personal injury suit in exchange for giving false testimony. The false charges were also contained in documents filed with the court for the sole purpose of having them republished in the news media. (*Bradley* v. *Hartford Acc. & Indemnity Co.*, *supra,* 30 Cal.App.3d at p. 822.) In reversing the dismissal following demurrer, the appellate court held section 47(2) protects only publications made to promote the interest of justice. (*Bradley, supra,* 30 Cal.App.3d at p. 826.) As noted, this "interest of justice" requirement was expressly overruled in *Silberg.* (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 219.)

The *Bradley* court noted that California cases have delineated the persons (parties, attorneys, witnesses, etc.) to whom the privilege applies, in harmony with the Restatement of Torts. (*Bradley* v. *Hartford Acc. & Indemnity Co.*, *supra,* 30 Cal.App.3d at p. 824.) Because the complaint alleged that the insurer, Hartford, was not a party to the prior action, the *Bradley* court concluded that Hartford was not one of the "designated persons" to whom the absolute privilege has been "extended" by law. (*Bradley, supra,* 30 Cal.App.3d at pp. 822, 826.) The court further stated that "*special emphasis must be laid on the requirement that [the communication] be made in furtherance of the litigation and to promote the interest of justice.* Only if this requirement has been satisfied, is it appropriate for the courts to define liberally the scope of the term 'judicial proceeding' and the persons who should be regarded as litigants or other participants." (*Id.* at p. 826, original italics.)

However, as noted, *Bradley*'s "interest of justice" test has been rejected by our Supreme Court. (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 219.) Additionally, *Bradley*'s restriction of "designated persons" to those identified in the Restatement has been questioned, because the statutory language contains no such limitations. (*ITT Telecom Products Corp.* v. *Dooley, supra,* 214 Cal.App.3d at p. 316.) We therefore respectfully decline to follow *Bradley*'s categorical exclusion of insurers from the section 47(2) privilege.

At oral argument, the Marchands' counsel contended that the California Supreme Court in *Silberg, supra,* approved *Bradley*'s rule that insurers are not protected by section 47(2). We disagree. In rejecting *Bradley*'s "interest of justice" test, *Silberg* stated that test was unnecessary to the decision in *Bradley,* because, "The court had already concluded that both the communicator and the communicatee were strangers to the action (neither parties, prospective witnesses nor attorneys in the action), and that the communication was not reasonably related to the action. Either of these conclusions was ample basis for holding that the communication was not privileged without resort to any 'interest of justice' test." (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 217.)

This language cannot be read as a holding that insurers are not protected by section 47(2). As we have noted, there was no issue in *Silberg* as to whether insurers are excluded from the privilege. The Supreme Court merely stated the "usual formulation . . . that the privilege applies to any communication . . . by litigants or other participants authorized by law; . . . ." (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 212.)

 " 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]' " (*Valentine* v. *City of Oakland* (1983) 148 Cal.App.3d 139, 149 [196 Cal.Rptr. 59], citing *Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]; see also *Snelgrove* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1376 [240 Cal.Rptr. 281]; *Taylor* v. *California State Auto. Assn. Inter-Ins. Bureau* (1987) 194 Cal.App.3d 1214, 1222 [240 Cal.Rptr. 107]; *Engs Motor Truck Co.* v. *State Bd. of Equalization* (1987) 189 Cal.App.3d 1458, 1476 [235 Cal.Rptr. 117].)

Since the question whether an insurer is a "participant authorized by law" for section 47(2) purposes was not considered or decided in *Silberg*, that case does not preclude our conclusion that insurers providing a defense are entitled to invoke the privilege in section 47(2).

We therefore conclude Doctors' was a "participant authorized by law" for purposes of section 47(2).

B. *The Privilege Applies to Communicative Conduct*

The Marchands contend the privilege does not apply, because their complaint alleges conduct, not communications. Thus, they claim the gravamen of their complaint is not the false testimony of Dr. Blain but rather Doctors' "formulation and implementation of a plan to destroy all evidence of culpability," and Dr. Blain's false testimony is merely evidence of Doctors' misconduct.

 It is true that section 47(2) does not apply to *noncommunicative* conduct and does not bar the *evidentiary* use of privileged communications in otherwise allowable actions. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202 [271 Cal.Rptr. 191, 793 P.2d 524]; *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168 [232 Cal.Rptr. 567, 728 P.2d 1202] [§ 47(2) operates as limitation on liability, not an exclusion of evidence]; *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870,

887-888 [221 Cal.Rptr. 509, 710 P.2d 309] [settlement offers admissible as evidence in action for breach of implied covenant of good faith and fair dealing]; *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] [§ 47(2) inapplicable to hospital's conduct in revoking physician's staff privileges].)

Thus, *Kimmel* v. *Goland, supra,* 51 Cal.3d 202, held section 47(2) did not bar an invasion of privacy action for the unlawful recording of confidential telephone conversations (in anticipation of litigation) in violation of Penal Code section 632. (*Id.* at p. 212.) Since the alleged injury occurred by the act of tape recording, rather than from any publication of information contained in the conversations, the litigation privilege did not apply. (*Id.* at p. 209.) The privilege was also inapplicable to noncommunicative conduct of an attorney aiding and abetting his clients' illegal tape recording. (*Id.* at pp. 207-208, 213, fn. 9.) However, the court explained, "To the extent the complaint rests on [the attorney's] alleged communicative acts of 'counseling' and 'advising' his clients, the privilege is clearly operative. [Citation.]" (*Id.* at p. 208, fn. 6.)

Here the Marchands do not complain of any *noncommunicative* conduct, such as a destruction of physical evidence causing injury apart from communication of an injurious falsehood.[7] Their only grievance is that Doctors' concealed Dr. Blain's liability (hence its own duty to indemnify) by communications to Dr. Blain and Dr. Achtel to lie in their depositions. Characterizing Doctors' conduct as "destruction" of evidence does not alter the fact that the "destruction" was accomplished entirely by statements made in the litigation. That circumstance brings the Marchands' action within the bounds of the privilege. Their claims, however styled, are founded upon the utterance of injurious communications in or in connection with the prior action. Doctors' cannot be liable without reliance on privileged communications made in the course of a judicial proceeding. (See *Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364-365 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417].)

---

[7] In asserting the complaint states a cause of action for spoliation of evidence, the Marchands cite our decision in *Jablonski* v. *Royal Globe Ins. Co.* (1988) 204 Cal.App.3d 379 [251 Cal.Rptr. 160]. We there allowed an action to proceed against a worker's compensation insurer for acts of fraud in intentionally and deceitfully denying the existence of the worker's compensation policy for purposes of evading the duty to pay compensation to an injured employee. The conduct supporting the spoliation of evidence theory was the destruction of documents containing evidence of the insurer's fraud. (*Id.* at pp. 392-394.) We noted, however, that destruction of evidence that related only to the employee's claim for benefits would not support the action, because such conduct would simply present a case of a mishandled claim giving rise to penalties against the insurer in the worker's compensation proceeding. (*Id.* at pp. 393-394.) *Jablonski* dealt with the question of a workers' compensation carrier's immunity from civil suit under worker's compensation laws. The application of section 47(2) was neither raised nor discussed in that case.

## C. *Section 47(2) Bars Claims Based on Subornation of Perjury*

Finally, the Marchands contend the privilege should not insulate Doctors' from the unethical and criminal conduct alleged in the complaint.

At worst, the complaint alleges Doctors' suborned perjury. However, it is well settled that section 47(2) bars claims based on subornation of perjury. (*Taylor* v. *Bidwell* (1884) 65 Cal. 489, 490 [4 P. 491]; *Carden* v. *Getzoff* (1987) 190 Cal.App.3d 907, 915 [235 Cal.Rptr. 698]; see *Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 218.)

This is not to say that we condone the outrageous conduct alleged in the complaint. But it is in the nature of a statutory privilege that it must deny a civil recovery for immediate wrongs—sometimes even serious and troubling ones—in order to accomplish what the Legislature perceives as a greater good. Moreover, we note that notwithstanding section 47(2), subornation of perjury remains a felony offense. (Pen. Code, §§ 126, 127; see *Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 219.)

The Marchands cite *Unruh* v. *Truck Insurance Exchange, supra,* 7 Cal.3d 616, which allowed an employee to pursue an action against a workers' compensation carrier despite Labor Code provisions limiting employees to worker's compensation remedies against employers and their insurers. The court held a carrier who engages in deceitful conduct in investigating the employee's claim steps outside its role as alter ego of the employer, and hence loses the Labor Code immunity from civil suit. (*Id.* at p. 630.) Section 47(2) was not discussed. *Unruh* is distinguishable, because it held the carrier's conduct took it outside the immunity. Here, as we have explained, it is the conduct itself (communications in the course of judicial proceedings) which makes the privilege applicable. Section 47(2) embraces the unethical and criminal conduct alleged in the complaint.

Accordingly, we conclude the action is barred by *Moradi-Shalal* and by section 47(2). The Marchands have failed to meet their burden to show a reasonable possibility that the pleading defect can be cured; therefore, the action must be dismissed. (*Blank* v. *Kirwan, supra,* 39 Cal.3d 311, 318.)

### DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its May 19, 1988, order and enter a new order sustaining

petitioner's demurrer to the second amended complaint without leave to amend. The parties will bear their own costs of this proceeding.

Carr, Acting P. J., and Sparks, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied March 28, 1991. Mosk, J., was of the opinion that the petition should be granted.