Filed 6/27/16  Alers v. Wraight CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALEJANDRO ALERS, SR., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MARQUIS IAN WRAIGHT et al., <br><br> Defendants and Respondents. | B265070 <br><br> (Los Angeles County <br> Super. Ct. No. BC568003) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Alejandro Alers, Jr. for Plaintiff and Appellant, Alejandro Alers, Sr.

Severson & Werson, Jan T. Chilton and Erik Kemp for Defendants and Respondents, Marquis Ian Wraight, An Le and Severson & Werson.

Alejandro Alers, Sr. sued Bank of America for breach of contract and fraud, claiming the bank had wrongfully debited his checking account $4,500 after a third-party check the bank had cashed was returned unpaid. Judgment was entered in favor of the bank and affirmed by the appellate division of the superior court. Alers then filed a lawsuit against the lawyers who had represented the bank—Mark Wraight, An Le and their law firm, Severson & Werson, A Professional Corporation (collectively lawyer defendants)—for fraud, intentional interference with contractual relations and other related torts, alleging the lawyer defendants had filed false documents and asserted frivolous defenses while representing the bank. The trial court granted the lawyer defendants' special motion to strike Alers's complaint pursuant to Code of Civil Procedure section 425.16 (section 425.16) and entered a judgment of dismissal in their favor. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The $4,500 Debit to Alers's Account and Alers's Fraud Claim*

On June 30, 2008 at the Midtown Center Branch of Bank of America in Los Angeles, Alers deposited a $600 United States Treasury (Social Security) check, payable to Alers, into his individual checking account. Alers's check card was presented and swiped at the teller window, and his personal identification code was entered at the time of the transaction. Alers also withdrew $1,000 from his account. At approximately the same time as the $1,000 withdrawal, a non-Bank of America check for $4,500, made out to cash from the account of Maria Gordillo and purportedly signed by her, was cashed using Alers's checking account as security for payment. The check was not endorsed, and Alers's name does not appear on it. All three transactions were handled by the same teller (identified only as bank teller no. 10) within several minutes of each other.

The $4,500 check was returned unpaid to Bank of America by Gordillo's bank because Gordillo's account was closed. On July 9, 2008, pursuant to the terms of Alers's checking account-deposit agreement, Bank of America debited $4,500 from Alers's

checking account. Alers's monthly statement from the bank dated July 22, 2008 reflected the debit and indicated it was made because of a returned item.

Alers filed a claim with the bank, insisting he did not know Gordillo and had not cashed the $4,500 check. (Gordillo subsequently reported a batch of her checks, including the one involved in this dispute, had been stolen; her signature on the $4,500 check was forged.) On August 1, 2008 the bank's fraud claims department rejected Alers's claim, explaining "[t]he transaction was processed using your Bank of America ATM/Debit Card and personal identification number." According to Alers, the bank subsequently reconsidered its denial of his claim and agreed, both orally and in writing, to return the debited amount to his checking account. However, the bank thereafter refused to do so. (The bank disputed Alers's assertion that it had agreed to reverse the debited item and challenged the authenticity of letters he claimed he had received from the bank confirming its agreement to reverse the charge.)

2. *Alers's Lawsuits Against Bank of America*

On February 16, 2012 Alers sued Bank of America in superior court for breach of contract and fraud. The matter was reclassified as a limited civil case. On April 11, 2013 the court granted Bank of America's motion for summary judgment. With respect to Alers's breach of contract claim, the court ruled the agreement governing Alers's checking account authorized the bank to charge his account if a cashed item was returned and Alers had failed to demonstrate a triable issue of material fact existed with regard to that question of contract interpretation. With respect to Alers's fraud claim, which was based on the bank's purportedly false statements it would reverse the debited item, the court ruled Alers could not show his reasonable reliance on the purported misrepresentations was a substantial factor in causing him harm: "Alers lost the $4500 debited his account from the [check] fraud; he did not lose more because he relied on the bank's letters."[1]

---

[1]     The trial court left unresolved the issue of the letters' authenticity, assuming for purposes of the summary judgment motion they were from the bank.

3

Alers appealed the judgment entered following the order granting summary judgment. On October 18, 2013 the appellate division affirmed, holding Alers had failed to provide an adequate record for review.

On January 27, 2014 Alers filed a lawsuit against Bank of America in United States District Court for violation of the Racketeer Influenced and Corrupt Organizations Act, title 18 of the United States Code section 1961 et seq. (RICO). Alers now alleged, in part, that bank teller no. 10 at the Midtown Center Branch of Bank of America had stolen checks from Gordillo and forged her signature on one of those checks made out to cash in the sum of $4,500. After Alers completed his deposit of $600 and withdrawal of $1,000 and walked away from the teller's window, bank teller no. 10 either reopened his account or allowed it to remain open and then cashed the check using Alers's checking account as security for payment. According to Alers's complaint, lawyers Wraight and Le, as well as the bank's in-house fraud claims investigators, gained full knowledge of teller no. 10's forgery and embezzlement during discovery in the state court action. Rather than disclose this information to the court or rectify the wrongful debiting of Alers's checking account, the bank, Wraight and Le conspired with each other to defraud Alers of the debited amount by misrepresenting and omitting facts in the state court litigation.

After several rounds of briefing, on April 24, 2014 the district court granted Bank of America's motion to dismiss the complaint for failure to state a claim. To the extent Alers's federal lawsuit was based on events that preceded his unsuccessful state court lawsuit (for example, the allegation that the bank's in-house counsel committed wire fraud when he allegedly promised Alers during a telephone call in September 2011 that the bank would return the $4,500 to Alers's checking account), the court held it was barred by the doctrine of res judicata (claim preclusion) based on the final judgment in that action. To the extent Alers was now alleging actions by the bank in the state court lawsuit itself, and through the conspiracy allegation challenging the conduct of the bank's

4

lawyers, the court held the RICO claim was barred by the *Noerr-Pennington* doctrine as protected petitioning activity.

Alers has filed an appeal from the district court's judgment of dismissal on May 13, 2014. That appeal is still pending.

3. *The Complaint Against the Lawyer Defendants*

On December 29, 2014 Alers filed a new state court action, naming Wraight, Le and Severson & Werson, the lawyers who had represented Bank of America in both Alers's earlier state court and his federal RICO lawsuits, as defendants. The complaint described the two prior actions and alleged the lawyer defendants had knowingly asserted frivolous affirmative defenses in the answer filed on behalf of the bank, made false statements to the court in connection with the bank's motion for summary judgment, improperly redacted portions of an exhibit submitted in support of that motion and failed to disclose to the trial court information that was inconsistent with the bank's theory Alers had cashed the $4,500 check. Based on these allegations Alers attempted to plead causes of action for fraud, intentional interference with contractual relations, financial elder abuse, false light, abuse of process and negligent supervision. He also included causes of action labeled misrepresentation to the court (one for an alleged violation of Business and Professions Code section 6068 and two for alleged violations of the Rules of Professional Conduct), conspiracy, vicarious liability, frivolous defense and punitive damages.

4. *The Special Motion To Strike*

The lawyer defendants filed a special motion to strike Alers's complaint pursuant to section 425.16 and, in the alternative, a demurrer to the complaint on the ground it failed to state a cause of action. Alers filed a written opposition and petitioned for leave to amend his complaint to add a cause of action for civil conspiracy between Bank of America and its attorneys pursuant to Civil Code section 1714.10. He also sought an order requiring payment of his attorney fees.

5

In an order dated May 18, 2015 the court granted the special motion to strike the complaint. The court first found that each of Alers's 13 causes of action arose from the lawyer defendants' protected petitioning activity—their statements and conduct in defending Bank of America in the 2012 state court lawsuit—thereby satisfying section 425.16's threshold requirement. The court then ruled those actions were absolutely privileged under Civil Code section 47, subdivision (b), the litigation privilege. Accordingly, Alers had failed to demonstrate a probability of prevailing on any of his claims, and the motion to strike the complaint was properly granted. The lawyer defendants' demurrer was deemed moot, and Alers's motion for attorney fees and petition to add a cause of action were ordered off calendar.[2]

A judgment of dismissal was entered on May 29, 2015. Alers filed a timely notice of appeal.

---

[2] Because it found Alers's motion for attorney fees and petition to add a cause of action (that is, to amend his complaint) were "procedurally and substantively improper," the court declined to hear them. Although Alers purports to appeal from the order taking those matters off calendar, he does not address that order other than to assert, without reasoned analysis or supporting authority, it should be reversed. He has forfeited any claim of error. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in appellate brief must be supported by argument and, if possible, by citation to authority]; *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["[a]n appellant has the burden to demonstrate reversible error with reasoned argument and citation to authority"; "[o]n appeal we need address only the points adequately raised by plaintiff in his opening brief on appeal"]; *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316, fn. 7 ["'[i]ssues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived'"]; see also *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

6

**DISCUSSION**

1. *Section 425.16: The Anti-SLAPP Statute*[3]

Section 425.16 provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Under the statute an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

In ruling on a motion under section 425.16, the trial court engages in a familiar two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of

---

[3] SLAPP is an acronym for "strategic lawsuit against public participation." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 815, fn. 1.)

prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; accord, *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

In terms of the so-called threshold issue, the moving party's burden is to show "the challenged cause of action arises from protected activity." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e) . . . .'" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

If the defendant establishes the statute applies, the burden shifts to the plaintiff to demonstrate a "probability" of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) In deciding the question of potential merit, the trial court properly considers the pleadings and evidentiary submissions of both the plaintiff and the defendant but may not weigh the credibility or comparative strength of any competing evidence. (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 19-20; *Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714.) The question is whether the plaintiff presented evidence in opposition to the defendant's motion that, if believed by the trier of fact, is sufficient to support a judgment in the plaintiff's favor. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) Nonetheless, the court should grant the motion "'if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" (*Vargas*, at p. 20; accord, *Zamos,* at p. 965.)

The moving party-defendant has the burden on the first issue; the plaintiff has the

burden on the second issue. (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 701; *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928.) We review the trial court's rulings independently under a de novo standard of review. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820; accord, *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*).)

>    2. *Alers's Claims Arose from Protected Petitioning Activity*

All of the claims in Alers's current lawsuit are predicated on his allegations that the lawyer defendants engaged in wrongful acts during their representation of Bank of America in Alers's 2012 state court lawsuit—using inadmissible evidence to support the bank's summary judgment motion, filing papers that failed to disclose information that was inconsistent with the bank's theory that Alers had cashed the $4,500 check, and making false statements in the course of presenting the bank's defenses. That is, he contends he was injured as a result of written or oral statements or writings made before a judicial proceeding or in connection with an issue under consideration or review by a judicial body. As such, the complaint and each of the its 13 causes of action unquestionably arose from the lawyer defendants' protected petitioning activity within the meaning of section 425.16, subdivision (e)(1) and (e)(2).

"'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citation.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation." (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056; accord, *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 ["'petitioning activity involves lobbying the government, suing, [and] testifying'"; "'"[t]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action"'"].) As our colleagues in Division Eight of this court explained in *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388, "Statements made in litigation, or in connection with litigation, are protected by

9

section 425.16, subdivision (e). Courts have taken a fairly expansive view of what constitutes litigation-related activity for purposes of section 425.16. [Citation.] The anti-SLAPP statutes protect not only the litigants, but also their attorneys' litigation-related statements." (Accord, *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1185 ["'an attorney who has been made a defendant in a lawsuit based upon a written or oral statement he or she made on behalf of clients in a judicial proceeding or in connection with an issue under review by a court, may have standing to bring a SLAPP motion'"]; see *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 741 [malicious prosecution action by its very nature arises out of defendant's constitutionally protected petitioning activity].)

Citing several cases in which the Courts of Appeal have held litigation activity was only incidental or collateral to the principal thrust or gravamen of the plaintiff's allegations and therefore outside the scope of section 425.16 (see, e.g., *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 729-730 ["'[a]lthough a party's litigation-related activities constitute "act[s] in furtherance of a person's right of petition or free speech," it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute'"]; *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414 ["if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion"]), Alers insists his claims against the lawyer defendants were based on personal injuries he suffered because of the improper debiting of his checking account, not First Amendment violations. Alers's argument betrays a fundamental misunderstanding of the requirements of section 425.16.

Neither the fact that Bank of America did not assert a First Amendment defense in its answer to Alers's complaint in the 2012 state court action or advance the First Amendment in support of its motion for summary judgment in that action nor the fact that Alers did not plead a First Amendment violation in the current lawsuit—points that Alers emphasizes in his briefs in this court—is relevant to the determination whether this

10

action fits within the scope of the anti-SLAPP protection provided by section 425.16. "'In the context of the anti-SLAPP statute, the "gravamen is defined by the *acts on which liability is based*." [Citation.] The "focus is on the principal thrust or gravamen of the causes of action, i.e., *the allegedly wrongful and injury-producing conduct* that provides the foundation for the claims."'" (*Olive Properties, L.P. v. Coolwaters Enterprises, Inc.* (2015) 241 Cal.App.4th 1169, 1175; accord, *Hunter v. CBS Broadcasting Inc*. (2013) 221 Cal.App.4th 1510, 1520.) Phrased somewhat differently, but to the same effect, "a cause of action can only be said to arise from protected conduct if it alleges at least one *wrongful* act—conduct allegedly *breaching a duty and thereby injuring the plaintiff*—that falls within the act's definition of protected conduct." (*Old Republic Construction Program Group v. The Boccardo Law Firm, Inc*. (2014) 230 Cal.App.4th 859, 869; see *id*. at p. 868 ["a cause of action arises from protected conduct if the *wrongful, injurious act(s)* alleged by the plaintiff constitute protected conduct"].) Here, all of the wrongful, injurious acts alleged by Alers constitute protected conduct. Each of his 13 causes of action is premised entirely on activities and statements made in the course of the 2012 state court litigation or in connection with that litigation—protected petitioning activity.

Alers's argument that section 425.16 does not apply to his lawsuit because he had alleged the lawyer defendants' conduct was illegal is similarly misplaced. As Alers observes, in *Flatley*, *supra*, 39 Cal.4th at page 320, the Supreme Court held, when the speech or petition activity upon which a defendant relies to support his or her section 425.16 special motion to strike "is conceded or shown to be illegal as a matter of law, such speech or petition activity will not support the special motion to strike." In *Flatley* the plaintiff, a well-known entertainer, filed an action against an attorney, alleging causes of action for civil extortion, intentional infliction of emotional distress and wrongful interference with economic advantage. The plaintiff's causes of action were based on a letter from the lawyer threatening to make public a rape allegation unless the plaintiff paid a "'settlement of $100,000,000.00.'" (*Flatley*, at pp. 305-308.) The Supreme Court concluded the letter and related telephone calls constituted criminal

11

extortion as a matter of law and held, where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law," the challenged activity will not support a special motion to strike. (*Id.* at p. 320.) However, the Court cautioned, "If . . . a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley*, at p. 316.)

Here, Alers's claims that the lawyer defendants made false statements in connection with the bank's summary judgment motion and intentionally misled the court are vigorously disputed. Accordingly, even if noncriminal statutory violations that are conceded or have been established as a matter of law would otherwise fall within the *Flatley* exception, an issue we need not decide, the holding of *Flatley* is inapplicable in this case. (See *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 965 [factually disputed allegation of attorney fraud under Bus. & Prof. Code, § 6128 insufficient to meet *Flatley* standard of illegality]; see also *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 446 ["[w]e understand *Flatley* to stand for this proposition: when a defendant's assertedly protected activity *may or may not be* criminal activity, the defendant may invoke the anti-SLAPP statute unless the activity is criminal as a matter of law"]; *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654 [*Flatley*'s term "'illegal' was intended to mean criminal, and not merely violative of a statute"].)[4]

---

[4] Alers's discussion of the purportedly illegal activity that occurred during the 2012 state court lawsuit also includes a misplaced challenge to the evidentiary rulings in that case, the trial court's order granting the bank's motion for summary judgment and the appellate division's decision affirming the judgment against him. That action is final and not subject to either direct or collateral attack. (See *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 10 ["[a]fter the time for seeking a new trial has expired and any appeals have been exhausted, a final judgment may not be directly attacked or set aside on the ground that evidence has been suppressed, concealed, or falsified"; "[s]imilarly, under the doctrine of res judicata and collateral estoppel, a

12

3. *Alers's Claims Are Barred by the Litigation Privilege*

Civil Code section 47, subdivision (b)(2), creates an absolute litigation privilege, barring all tort claims other than for malicious prosecution based on statements or other communications made in a judicial proceeding. (*Flatley, supra*, 39 Cal.4th at p. 322; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360.)[5] "The principal purpose of [Civil Code] section 47[, subdivision (b),] is to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.) The privilege also "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests." (*Id*. at p. 214.) "Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Ibid.*; accord, *Flatley*, at p. 322.) "To further these purposes, the privilege has been broadly applied." (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955.)

"The usual formulation [of the litigation] privilege [is that] the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and

---

judgment may not be collaterally attacked on the ground that evidence was falsified or destroyed"]; *Mullen v. Department of Real Estate* (1988) 204 Cal.App.3d 295, 301 ["where the fraud was committed within the trial there can be no relief. '[It] is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony'"].)

[5] Civil Code section 47 provides in part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows . . . ."

13

(4) that have some connection or logical relation to the action." (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212; see *Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529 [litigation privilege bars cause of action "provided that there is some reasonable connection between the act claimed to be privileged and the legitimate objects of the lawsuit in which that act took place"].) "The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm. [Citation.] . . . [¶] If there is no dispute as to the operative facts, the applicability of the litigation privilege is a question of law. [Citation.] Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.)

"'A plaintiff cannot establish a probability of prevailing [in responding to a motion pursuant to section 425.16] if the litigation privilege precludes the defendant's liability on the claim.'" (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 814; accord, *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1172; see *Flatley*, *supra*, 39 Cal.4th at p. 323 [litigation privilege may present a substantive defense the plaintiff must overcome to demonstrate a probability of prevailing]; *Kashian v. Harriman*, *supra*, 98 Cal.4th at pp. 926-927 [where defamation action was barred by litigation privilege, plaintiff cannot demonstrate a probability of prevailing under the anti-SLAPP statute].) As it pertains to Alers's allegations of misconduct by the lawyer defendants, "The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.'" (*Flatley*, at p. 322, quoting *Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 218; accord, *Jacob B. v. County of Shasta*, *supra*, 40 Cal.4th at p. 956 ["the privilege extends even to civil actions based on perjury"]; see, e.g., *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 20, 22-26 [attorney's misrepresentation of available insurance policy limits to induce the settlement of a lawsuit]; *Doctors' Co. Ins. Services v. Superior Court* (1990) 225 Cal.App.3d 1284, 1300 [subornation of perjury]; *Carden v. Getzoff* (1987) 190 Cal.App.3d 907, 915 [perjury]; *Steiner v. Eikerling* (1986) 181 Cal.App.3d 639, 642-643 [preparation of a forged will

14

and presentation of it for probate].) Accordingly, the lawyer defendants' challenged conduct falls well within the absolute protection of the litigation privilege. (See *Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1058 [litigation privilege properly applied to claims based on allegations of filing false or perjurious testimony or declarations].)

Quoting snippets of language from *Flatley*, *supra*, 39 Cal.4th 299, Alers attempts to avoid the clear import of this case law establishing the lawyer defendants' complete defense to his complaint and its 13 causes of action by arguing Civil Code section 47 is inapplicable when considering a motion to strike under section 425.16. Alers's reliance on *Flatley* is flawed.

To be sure, the Supreme Court in *Flatley* discussed the different purposes served by section 425.16 and Civil Code section 47, subdivision (b), and explained that, "[n]otwithstanding [the] relationship between the litigation privilege and the anti-SLAPP statute . . . the two statutes are not substantively the same." (*Flatley*, *supra*, 39 Cal.4th at p. 323.) The Court then rejected defendant Mauro's contention that, "because some forms of illegal litigation-related activity may be privileged under the litigation privilege, that activity is necessarily protected under the anti-SLAPP statute." (*Id.* at p. 325.) Emphasizing that the evidence of Mauro's threatening conduct was uncontroverted,[6] as discussed, the Supreme Court held the assertedly protected letter and telephone calls constituted criminal extortion as a matter of law and, therefore, not constitutionally protected activity under the anti-SLAPP statute. (*Id.* at pp. 331-332.)

What Alers fails to acknowledge, however, is that the Supreme Court's discussion of the distinction between constitutionally protected activity for purposes of section 425.16 and the scope of the litigation privilege was solely in the context of the first step, or threshold issue, in the anti-SLAPP analysis (does the cause of action arise from protected activity), not the second step in that analysis (has the plaintiff

---

[6] As discussed in the preceding section, defendant Mauro, a lawyer, threatened to publicly accuse Flatley of raping his client and violations of other laws unless Flatley paid a large sum of money as a prelitigation settlement.

demonstrated a probability of prevailing on the merits). As the Court stated, "The fact that Civil Code section 47 may limit the liability of a party that sends to an opposing party a letter proposing settlement of proposed litigation does not mean that the settlement letter is also a protected communication for purposes of section 425.16." (*Flatley*, *supra*, 39 Cal.4th at p. 325.) With respect to the second step, however, the *Flatley* Court expressly recognized the litigation privilege is directly relevant because "it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Id.* at p. 323.)

In the preceding section we explained why *Flatley* does not except Alers's claims based on the lawyer defendants' alleged misconduct in the 2012 state court litigation from the protection of the anti-SLAPP statute—the first step. Here we are dealing with the second step of the analysis, where *Flatley* confirms the litigation privilege necessarily defeats Alers's claims even if he were able to prove the judgment in the 2012 state court litigation was obtained through the use of fraudulent exhibits or perjured testimony. (*Flatley*, *supra*, 39 Cal.4th at p. 322 ["[t]he litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony'"].)

In sum, the trial court correctly ruled Alers's claims were all based on the lawyer defendants' protected petitioning activity and, because that activity falls well within the scope of the litigation privilege, Alers cannot demonstrate a probability of prevailing on the merits as to any of his 13 causes of action. The special motion to strike was properly granted.

16

## DISPOSITION

The judgment is affirmed.  Wraight, Le and Severson & Werson are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J.