**Salvador MORALES, Plaintiff–Appellant,**

v.

**COOPERATIVE OF AMERICAN PHYSICIANS, INC., MUTUAL PROTECTION TRUST ("CAP–MPT"); Schmid, Noreck & Voiles, a law firm, Defendants–Appellees.**

No. 97–56217.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 1999.

Filed June 14, 1999.

Nathaniel J. Friedman (argued), Los Angeles, California, for the plaintiff-appellant.

Howard N. Wollitz (argued), Timothy J. Harris, Charlston, Revich & Williams, Los

Angeles, California, for the defendants-appellees.

Before: O'SCANNLAIN and TASHIMA, Circuit Judges; and REED,* District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether the California litigation privilege bars a suit for intentional and negligent misrepresentation based upon a response to an interrogatory in a state court medical malpractice action.

## I

On December 14, 1994, Salvador Morales underwent surgery, as a result of which he was rendered totally and permanently blind in his left eye. Morales brought suit in Los Angeles County Superior Court for medical malpractice against Dr. Spence, and his employer, Verdugo Hills Anesthesiology Medical Group, Inc. ("VHA"), and various other defendants. Dr. Spence was insured in his individual capacity by The Doctors' Company and VHA was insured by Cooperative of American Physicians, Inc., Mutual Protection Trust ("CAP–MPT"). CAP–MPT retained the law firm of Schmid, Noreck & Voiles ("Schmid") to defend VHA in the state court proceedings.

During the litigation, Morales propounded interrogatories to Dr. Spence and VHA. Interrogatory 4.1(a) through (g) dealt with insurance coverage. Specifically, the interrogatory inquired about the "kind of coverage," "limits of coverage," and "whether any reservation of rights or controversy or coverage dispute exists." Dr. Spence responded that he was insured by The Doctors' Company for $1,000,000. On

behalf of VHA, Schmid responded as follows:

> This responding defendant has coverage for medical malpractice claims through membership in the Cooperative of American Physicians, Inc./Mutual Protection Trust. The coverage and benefits provided to members are similar to those provided by an insurance company; however, such membership cannot be represented to be "insurance." The limit of liability provided by CAP/MPT is $1 million for any one occurrence and $3 million for any one calendar year. Such amounts are the total limit of CAP/MPT's liability for all damages, interest, defense attorneys' fees and costs.

Eventually, Morales settled with Dr. Spence for $240,000, funded out of the Doctors' Company coverage.

At a court-ordered settlement conference, Schmid disclosed that CAP–MPT's policy of indemnity issued to VHA was excess to the insurance policy issued to Dr. Spence by The Doctors' Company.[1] Morales's suit then proceeded to trial. After several days of testimony, Morales settled with VHA for $600,000 against the wishes of VHA's insurer, CAP–MPT. VHA assigned its rights against CAP–MPT to Morales in return for a covenant not to execute on the judgment. Morales then filed suit in state court against CAP–MPT alleging breach of contract and breach of the covenant of good faith and fair dealing. Pursuant to a clause in VHA's policy, binding arbitration ensued and Morales lost.

Morales subsequently filed this diversity suit against CAP–MPT and Schmid in federal district court alleging one count of negligent misrepresentation and one count of intentional misrepresentation based on VHA's response to interrogatory 4.1 in the state court medical malpractice action. CAP–MPT and Schmid filed a motion to dismiss for failure to state a claim on the

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

1. An insurer has no obligation to pay under an excess policy until the primary policy's coverage has been exhausted.

grounds that Morales's suit was barred by California's litigation privilege.

In granting the motion to dismiss pursuant to Rule 12(b)(6), the district court held that Morales's suit was barred by the litigation privilege as embodied in California Civil Code § 47(b). The court further held that Morales's suit did not fall within subsection (3), an exception to the litigation privilege, which provides that statements "made in a judicial proceeding knowingly concealing the existence of an insurance policy or policies" are not privileged.

Morales appeals.

## II

■ California's "litigation privilege" is codified in California Civil Code § 47(b), which provides, in pertinent part, that "[a] privileged publication or broadcast is one made ... [i]n any ... judicial proceeding...." Cal. Civ.Code § 47(b). "For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)." *Rubin v. Green,* 4 Cal.4th 1187, 1193, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993). The California Supreme Court has held that:

> [T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action.

*Silberg v. Anderson,* 50 Cal.3d 205, 212, 266 Cal.Rptr. 638, 786 P.2d 365 (1990).[2] California courts have given the privilege an expansive reach, *see Rubin,* 4 Cal.4th at

1193–94, 17 Cal.Rptr.2d 828, 847 P.2d 1044, and held that the privilege is absolute, even if the result is inequitable, *see Doctors' Co. Ins. Services v. Superior Court,* 225 Cal.App.3d 1284, 1294, 275 Cal. Rptr. 674 (1990). Moreover, any doubt as to whether the privilege applies is resolved in favor of applying it. *See Adams v. Superior Court,* 2 Cal.App.4th 521, 529, 3 Cal.Rptr.2d 49 (1992).

■ Here, the interrogatory response that forms the basis of Morales's suit appears to meet the privilege requirements under section 47(b). Schmid's response (on behalf of CAP–MPT) was (1) made in a medical malpractice action filed against VHA; (2) made on behalf of VHA, the defendant, by its attorney Schmid;[3] (3) in response to an interrogatory from Morales, the plaintiff; and (4) was clearly intrinsically related to the suit. Morales argues, however, that his suit is not barred by section 47(b) because the litigation privilege does not protect statements made "in a judicial proceeding knowingly concealing the existence of an insurance policy." Cal. Civ.Code § 47(b)(3). Morales asserts that the interrogatory response "conceal[ed] the existence" of VHA's insurance policy because it failed to reveal that VHA's policy was "excess" rather than "primary" and thus within the section 47(b)(3) exception enacted in response to a California appellate court decision, *California Dredging Co. v. Insurance Co. of North America,* 22 Cal.Rptr.2d 461 (Cal.App.1993).

In *California Dredging,* a dredging contractor filed suit in federal court against the manufacturer of allegedly defective plastic pipe. *See id.* at 463. In response to discovery requests, the manufacturer

---

**2.** The purpose of the privilege is to afford litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg,* 50 Cal.3d at 213, 266 Cal. Rptr. 638, 786 P.2d 365. "In other words, the litigation privilege is intended to encourage parties to feel free to exercise their fundamental right of resort to the courts for assistance in the resolution of their disputes, without being chilled from exercising this

right by the fear that they may subsequently be sued in a derivative tort action arising out of something said or done in the context of the litigation." *Edwards v. Centex Real Estate Corp.,* 53 Cal.App.4th 15, 29, 61 Cal.Rptr.2d 518 (1997).

**3.** Where an insurer provides a defense for a party, as here, the privilege applies to the insurer. *See Doctors' Co.,* 225 Cal.App.3d at 1295.

represented that it had a single $100,000 primary insurance policy available to settle the contractor's claims. The manufacturer made similar representations in settlement discussions conducted in court. In fact, the manufacturer had three additional insurance policies, including a $5 million excess policy. Unaware of these additional policies, the plaintiff contractor agreed to settle with the defendant manufacturer for $100,000. *See id.*

The contractor later filed suit against the manufacturer in state court alleging that it had fraudulently concealed the existence of the additional policies. The California First District Court of Appeal held that the contractor's suit was barred by the litigation privilege contained in section 47(b). The court stated:

> We recognize the unfairness of [the defendant's] alleged false understatement of insurance coverage.... We are bound, however, by the decisions of our Supreme Court ... which holds [sic] that the overriding policy of section 47(b)-enhancing the finality of judgments and avoiding unending post judgment litigation to redress wrongs committed during the proceedings predicating the judgment-avoids an evil greater than the grossly unfair result alleged to have occurred here.

*Id.* at 468 (citations omitted).

Shortly after the *California Dredging* decision, the California legislature amended section 47(b) by adding subsection (3) to create an exception to the litigation privilege for statements made "in a judicial proceeding knowingly concealing the existence of an insurance policy," adding, in the text of the bill, "[i]t is the intent of the Legislature in amending Section 47 of the

Civil Code to overturn the decision in *California Dredging Company v. Insurance Company of North America,* 22 Cal. Rptr.2d 461." 1994 Cal. Stat. Ch. 700, § 1.[4]

Section 47(b)(3) has not been examined by any California courts since its enactment. Because there are no California cases construing section 47(b)(3), this court's task is to predict how the California Supreme Court would interpret this section. *See Nelson v. City of Irvine,* 143 F.3d 1196, 1206 (9th Cir.1998).

■ We conclude that under the plain language of the statute, section 47(b)(3) does not encompass the interrogatory response at issue in this case. *See Committee of Seven Thousand v. Superior Court,* 45 Cal.3d 491, 501, 247 Cal.Rptr. 362, 754 P.2d 708 (1988) (in construing statutory language the California Supreme Court looks first to the words of the statute, "giving them their usual and ordinary meaning"). This exception to the litigation privilege provides that statements that "conceal[ ] the existence" of an insurance policy are not privileged. Here, CAP–MPT and Schmid did not "conceal the existence" of an insurance policy. To the contrary, the response disclosed the existence of the policy and its limits. We agree with the district court that

> [i]n the underlying medical practice case CAP/MPT did not conceal the existence of coverage; it specifically acknowledged its coverage noting that its obligation was $1 million per occurrence. While this response did not state that the insurance was excess or primary, this fail-

4. Morales's argument that this case is factually indistinguishable from *California Dredging* is unpersuasive. Morales argues that "[t]here is no material distinction between refusing to disclose the amount of excess coverage available, as in *California Dredging,* and refusing to disclose ... that the coverage represented, is excess to any other policy that might provide coverage for the indemnitee...." Morales misstates the facts of *California Dredging.* The defendant in *California Dredging* did not

fail to disclose the *amount* of excess coverage, it failed to disclose the *existence* of three insurance policies, two of which were primary coverage policies and one of which was an excess coverage policy. *See* 22 Cal.Rptr.2d at 463. In other words, the plaintiff in *California Dredging* did not know that the defendant had additional insurance policies, much less the terms of those policies. Here, while Morales did not know the terms of VHA's policy, he did know of its *existence.*

ure of description did not conceal the "existence" of insurance which [section] 47(b)(3) was enacted to prevent.

Morales makes much of the fact that the response to interrogatory 4.1 was incomplete in that CAP–MPT failed to provide specific responses to subparagraphs (a) through (g) of the interrogatory.[5] Morales fails to understand that, while he could have compelled CAP–MPT to answer the interrogatory in greater detail during the state court litigation, a derivative tort action based on the deficient response after the litigation has concluded is barred by section 47(b).[6]

In essence, Morales asks us to read section 47(b)(3) to allow suits based on statements that conceal the *terms* of an insurance policy. Such interpretation, however, is beyond the plain language of the statute and we doubt that the California Supreme Court would adopt it. That court has emphasized that the litigation privilege is to be interpreted broadly, *see Silberg*, 50 Cal.3d at 212, 266 Cal.Rptr. 638, 786 P.2d 365, and has evinced a "strong policy favoring use of nontort rem-edies rather than derivative tort causes of action to punish and correct litigation misconduct," *Cedars–Sinai*, 18 Cal.4th at 11, 74 Cal.Rptr.2d 248, 954 P.2d 511. Given these principles, we are confident that the California Supreme Court would interpret section 47(b)(3) narrowly, allowing a derivative tort action only when a litigant claimed to lack insurance altogether or, as in *California Dredging*, failed utterly to reveal the existence of insurance policies. Here, because CAP–MPT and Schmid did not hide the existence of VHA's insurance policy, we conclude that Morales's suit is barred by California's litigation privilege.

AFFIRMED.

---

**5.** CAP–MPT admits that the interrogatory response was deficient. For example, subparagraph (d) asked for the "policy number," but the response failed to list it.

**6.** Morales argues that California law requires a party to respond truthfully and completely to interrogatories. *See Union Bank v. Superior Court*, 31 Cal.App.4th 573, 580 n. 3, 37 Cal.Rptr.2d 653 (1995) ("Parties must state the truth, the whole truth, and nothing but the truth in answering written interrogatories." (internal quotation marks and citation omitted)). To be sure, VHA had a duty to respond fully and truthfully to interrogatory 4.1, but that does not mean that Morales's *remedy* for VHA's failure to fulfill this duty is a subsequent suit for misrepresentation. Indeed, Morales did not lack a remedy for VHA's failure to respond completely to interrogatory 4.1. Morales could have filed a motion to compel VHA to answer the interrogatory or a motion for sanctions against VHA. The California Supreme Court recently reaffirmed its preference for "remedying litigation-related misconduct by sanctions imposed within the underlying lawsuit rather than by creating new derivative torts." *Cedars–Sinai Med. Ctr. v. Superior Court*, 18 Cal.4th 1, 8–9, 74 Cal. Rptr.2d 248, 954 P.2d 511 (1998). And the court noted in *Silberg* that "the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation. . . . For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause *during the proceedings*. To allow a litigant to attack the integrity of evidence *after the proceedings have concluded*, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system." 50 Cal.3d at 214, 266 Cal.Rptr. 638, 786 P.2d 365 (emphasis added). Thus, the burden was on Morales to bring VHA's alleged misconduct to the state court's attention during the underlying litigation. A separate suit after that litigation has concluded is not the appropriate remedy.