[No. C036889. Third Dist. Feb. 7, 2002.]

HOME INSURANCE COMPANY, Plaintiff and Appellant, v.
ZURICH INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Bishop, Barry, Howe, Haney & Ryder, Nelson C. Barry, Sr., and Carol L. Healey for Plaintiff and Appellant.

Stevens & O'Connell and David A. Cheit for Defendants and Respondents.

## Opinion

**MORRISON, J.**—Home Insurance Company appeals from a judgment of dismissal in favor of Zurich Insurance Company after a demurrer to its first amended complaint for fraud, declaratory relief, and subrogation or indemnity was granted without leave to amend. Home's action is premised on an alleged misrepresentation by counsel for Zurich's predecessor. Counsel allegedly misrepresented the available insurance policy limits to induce settlement of a lawsuit. Since any such statement is absolutely privileged under the litigation privilege of Civil Code section 47, subdivision (b), it will not support a direct fraud action for damages. In addition, such a misrepresentation constitutes intrinsic, not extrinsic, fraud and provides no basis for equitable relief. We affirm the judgment.

### Factual and Procedural Background

The following facts are derived from the complaint since we assume the truth of all properly pleaded material allegations in reviewing a ruling on a demurrer. (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) This case arises from an automobile accident. On November 5, 1993, Michelle Canfield, the daughter of Patricia and Norman Fahrner, was driving their car with their consent and permission. She was negligent and inattentive and rear-ended Luana Pinasco's car.

The Fahrners had an automobile liability policy with Maryland Casualty Company (Maryland Casualty) with policy limits of $500,000 per automobile accident. Pinasco and her husband, Norman Main, had an automobile liability policy with Home Insurance Company (Home) with limits of $500,000 per accident.

Pinasco and Main sued Canfield for damages and Maryland Casualty assumed the defense. The lawsuit was settled for $15,000 and Pinasco and Main executed a full release. Pinasco and Main then made a claim against Home under the provisions of their underinsured motorist coverage. The claim was arbitrated, resulting in a net award to Pinasco and Main of $222,465.82, which Home paid.

Maryland Casualty was acquired by Zurich Insurance Company (Zurich).

Home brought suit against Zurich to set aside the release, and for fraud, a declaration of rights, and indemnity and subrogation. Home alleged that during the course of the lawsuit of Pinasco and Main, Maryland Casualty

advised counsel for Pinasco and Main that Canfield was a permissive user only and that the financial responsibility limits of Vehicle Code section 17151 applied to restrict the policy limits to $15,000. Relying on these representations, Pinasco and Main settled the case for $15,000, although their damages were greater. Home further alleged that Canfield, as a permissive user, was an insured under the Fahrners' policy and the agents and employees of Maryland Casualty knew the applicable policy limits were $500,000. The misrepresentation of the policy limit was made to induce Pinasco and Main to settle their suit for less than the actual value of their claims.

Home agreed to arbitrate the underinsured motorist claim, believing the settlement and release were valid. The fraudulently induced release precluded Home from pursuing an indemnity or subrogation claim against Canfield or Maryland Casualty. This fraudulent conduct damaged Home in the amount of $222,465.82, plus $33,549.19 in attorney fees incurred during the arbitration, plus additional attorney fees. Home also sought a declaration that the release executed by Pinasco and Main was obtained through fraud and was null and void. Finally, Home claimed the release could not bar Home from pursuing its claim against Canfield and Maryland Indemnity and it was entitled to recoup the funds it paid to Pinasco and Main and attorney fees.

Zurich demurred to this complaint on the basis that it was barred by Insurance Code section 11580.2, subdivision (p), which bars subrogation actions by underinsured motorist carriers; it failed to state facts constituting a cause of action; and it improperly sought to state a direct cause of action against a liability insurer without a prior adjudication of the liability of the insured.

The court sustained the demurrer with leave to amend.

Home filed a first amended complaint for fraud and misrepresentation, declaration of rights, and indemnity and subrogation. This amended complaint contained two significant changes from the original complaint. First, Home alleged that during the course of the Pinasco and Main lawsuit against Canfield, Maryland Casualty "by and through its retained counsel, represented to counsel for Luana Pinasco, Norman Main and Home Insurance Co. that the policy limits available to Michelle Canfield were $15,000." This fraudulent misrepresentation was made to induce Pinasco and Main to settle their tort claim for only 3 percent of the policy limits, with knowledge that Pinasco and Main would seek the balance of their damages from Home. Second, Home alleged that a business relationship had developed between

counsel for Pinasco and Main and counsel for Maryland Casualty, and Home, such as to cause Pinasco, Main, and Home to place confidence in the integrity of Maryland's counsel and rely on the representations of fact. They had no reason not to rely on these representations as Maryland Casualty had superior knowledge of its policy and "had developed a high degree of integrity among other insurance companies and legal counsel in the Sacramento area."

Zurich again demurred, on the same grounds as before.

The court sustained the demurrer without leave to amend. It found Home failed to allege justifiable reliance and there was no cause of action available for indemnity or subrogation.

## DISCUSSION

### I

Home contends it was error to sustain the demurrer on the ground that Home's reliance on the misrepresentation was not reasonable as a matter of law. Home asserts the rule of caveat emptor is dead. It argues the question of whether reliance is reasonable is one of fact and it had no duty to investigate the limits of Canfield's insurance coverage.

On the facts of this case, reliance on the representation of available policy limits by counsel for Maryland Casualty was unreasonable as a matter of law because such representation was absolutely privileged under the litigation privilege.[1] Although Zurich raises it on appeal, it did not assert the litigation privilege as a ground for the demurrer. Zurich relegated discussion of the privilege to a footnote in its points and authorities supporting the demurrer, arguing the absolute litigation privilege underscored the unreasonableness of relying on a statement made by opposing counsel during litigation. Zurich's failure to raise the issue below does not prevent our consideration of it on appeal. "A party may present a pure issue of law to the reviewing court even if it has not been raised below; with respect to a ruling on the pleadings, we review the result and not the reasons therefor, so that the ruling will be upheld if correct on any theory. (*Carman* v. *Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].)" (*Courtesy Ambulance Service v. Superior Court* (1992) 8 Cal.App.4th 1504, 1519, fn. 12 [11 Cal.Rptr.2d 161].)

---

[1]As this case is at the pleading stage, we have assumed the truth of the allegation of a deliberate misrepresentation. While we hold such misrepresentation to be absolutely privileged and therefore unable to support a fraud action, nothing in this opinion should be read to condone such behavior in litigation.

Under Civil Code section 47, subdivision (b), "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . judicial proceeding, . . ." "Despite its explicit wording, the privilege described by section 47(b) has been given expansive application by California courts. Although originally enacted with reference to defamation actions alone [citation], the privilege has been extended to *any* communication, whether or not it is a publication, and to *all* torts other than malicious prosecution. [Citations.] Thus, the privilege has been applied to suits for fraud [citations], negligence and negligent misrepresentation [citation], and interference with contract [citation]." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 29 [61 Cal.Rptr.2d 518], italics in original.) "Any doubt as to whether the privilege applies is resolved in favor of applying it. [Citations.]" (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529 [3 Cal.Rptr.2d 49].)

The litigation privilege furthers several policies. "The principal purpose of section 47[, subdivision (b)] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213 [266 Cal.Rptr. 638, 786 P.2d 365].) The privilege promotes effective judicial proceedings by encouraging " 'open channels of communication and the presentation of evidence' " without the external threat of liability. (*Ibid.*) The litigation privilege "further promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests." (*Id.* at p. 214.) "Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result. [Citations.]" (*Ibid.*)

"For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings. To allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system. [Citations.]" (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 214.) "To effectuate its vital purposes, the litigation privilege is held to be absolute in nature. [Citations.]" (*Id.* at p. 215.)

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation;

and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 212.)

The litigation privilege applies to the statement alleged as the basis of Home's fraud action as the statement meets the four criteria of the "usual formulation." The statement was made in a judicial proceeding. "The privilege attaches even though the publication was made outside a courtroom, as many portions of a 'judicial proceeding' occur outside of open court. [Citations.]" (*Asia Investment Co. v. Borowski* (1982) 133 Cal.App.3d 832, 842 [184 Cal.Rptr. 317, 30 A.L.R.4th 561].) It applies to statements made by counsel during settlement negotiations. (*Id.* at p. 843; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1422 [103 Cal.Rptr.2d 174]; *Joseph A. Saunders, P.C. v. Weissburg & Aronson* (1999) 74 Cal.App.4th 869, 875 [87 Cal.Rptr.2d 405].) Where the insurer provides a defense for a party, the realities of the insurer's role in litigation dictate that the insurer be treated as an authorized party for purposes of the litigation privilege. (*Doctors' Co. Ins. Services v. Superior Court* (1990) 225 Cal.App.3d 1284, 1295 [275 Cal.Rptr. 674].) The statement meets the third and fourth criteria as it was made to induce settlement of Pinasco and Main's lawsuit against Canfield.

■ Home contends the litigation privilege is not applicable because Zurich did not contemplate litigation with Home at the time the statement was made. It contends there is no policy reason to extend the privilege to statements made to third parties not involved in the tort claim. ■ Home is correct that the privilege applies in the prelitigation context only when "imminent access to the courts is seriously proposed by a party in good faith for the purpose of resolving a dispute." (*Edwards v. Centex Real Estate Corp., supra,* 53 Cal.App.4th 15, 36.)

■ Home's amended complaint, however, does not allege a statement made to Home independent of the pending lawsuit by Pinasco and Main. Rather, it alleges only one statement was made by counsel for Maryland Casualty, "[d]uring the course of" Pinasco and Main's lawsuit against Canfield "to counsel for Luana Pinasco, Norman Main and Home Insurance Co." Further, the alleged misrepresentation was made to induce Pinasco and Main to settle their lawsuit, with knowledge they would seek the balance of their damages from Home. As set forth in the amended complaint, the alleged misrepresentation was made during a lawsuit to induce settlement and therefore falls within the litigation privilege.

There is an exception to the litigation privilege for concealing the existence of insurance policies. "This subdivision does not make privileged any communication made in a judicial proceeding knowingly concealing the

existence of an insurance policy or policies." (Civ. Code, § 47, subd. (b)(3).) This exception does not apply. The alleged misrepresentation did not conceal the existence of any insurance policy; it concealed only the terms of the policy.[2]

In *Morales v. Cooperative of American Physicians* (9th Cir. 1999) 180 F.3d 1060 (*Morales*), the Ninth Circuit Court of Appeals held the exception to California's litigation privilege for concealing the existence of insurance policies did not apply to permit a derivative tort action for concealing the terms of a policy. In *Morales*, the plaintiff brought a medical malpractice action against a doctor and the doctor's employer, "VHA." Morales propounded interrogatories to the doctor and VHA about insurance coverage. VHA answered it had insurance, but did not disclose that it was excess insurance to that carried by the doctor. The excess nature of VHA's insurance was revealed in a settlement conference after Morales had settled with the doctor for less than the limits of his policy. Morales then brought suit against VHA's insurer for negligent and intentional misrepresentation. The district court granted the defense motion to dismiss. (*Id.* at pp. 1061-1062.)

The *Morales* court considered that Civil Code section 47, subdivision (b)(3) was added to overturn the decision in *California Dredging Co. v. Insurance Co. of North America* (Aug. 31, 1993, A057201), review granted December 2, 1993, S035492, and review dismissed October 27, 1994. In that case the defendant failed to disclose the existence of three insurance policies, two primary and one excess. The plaintiff, therefore did not know of the additional policies, much less their terms. "Here, while Morales did not know the terms of VHA's policy, he did know of its *existence*." (*Morales, supra,* 180 F.3d at p. 1063 and fn. 4, italics in original.)

The Ninth Circuit concluded the plain language of Civil Code section 47, subdivision (b)(3) did not encompass the facts of this case as the insurer did not conceal the existence of coverage. (*Morales, supra,* 180 F.3d at p. 1063.) Morales stressed the insurer's answer to the interrogatory was incomplete. The court noted that Morales could have compelled the insurer to answer the interrogatory fully, which would have revealed the excess nature of the policy. The remedy for litigation misconduct was not a derivative tort action. (*Id.* at p. 1064.)

This case is similar to *Morales, supra,* 180 F.3d 1060. The existence of the Maryland Casualty policy was revealed; it was only the true extent of

---

[2]At oral argument, counsel for Home characterized the misrepresentation as going to Canfield's status as an insured, rather than as to the terms of the policy. Such a representation in support of a client's position is the sort of zealous representation the litigation privilege is designed to protect. (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 214.)

coverage that was concealed. Significantly, the record does not reveal any attempted discovery to learn the terms of the policy either by Pinasco and Main in their action against Canfield or by Home in responding to Pinasco and Main's claim for underinsured motorist coverage. The failure to use discovery tools supports application of the litigation privilege. ▮ "In barring subsequent derivative actions based on the statements of witnesses, attorneys or parties during litigation, the privilege is intended to force litigants to utilize the available discovery apparatus to uncover the truth prior to final judgment. [¶] These four stated reasons for the privilege reflect our strong belief in the adversarial system as a means of attaining justice in the resolution of disputes. We recognize the necessarily harsh result in extending a privilege to false and fraudulent statements made in the course of a judicial proceeding. We accept that result, however, on account of the overriding importance of the competing public policy in favor of enhancing the finality of judgments and avoiding unending postjudgment derivative litigation—a policy which places the obligation on parties to ferret out the truth while they have the opportunity to do so *during* litigation." (*Edwards v. Centex Real Estate Corp., supra,* 53 Cal.App.4th at p. 30, italics in original.)

▮ Since the alleged misrepresentation was absolutely privileged, the trial court did not err in sustaining the demurrer to the fraud claim.

## II

The litigation privilege does not apply to an equitable action to set aside a settlement agreement for extrinsic fraud. (*Silberg v. Anderson, supra,* 50 Cal.3d 205, 214.) ▮ "Where a civil judgment is procured by extrinsic fraud, the normal remedy is to seek equitable relief from the judgment, not to sue in tort. [Citations.]" (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1147 [97 Cal.Rptr.2d 707].) ▮ Although not clearly pled, the first amended complaint also seeks to set aside the release Pinasco and Main executed on the basis of fraud. Since a complaint must be upheld against a demurrer if it states a cause of action on any theory (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118 [51 Cal.Rptr.2d 251, 912 P.2d 1198]; *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1232 [44 Cal.Rptr.2d 352, 900 P.2d 601]), we determine whether the first amended complaint states a cause of action for setting aside the release for extrinsic fraud.

▮ "Fraud is extrinsic where the defrauded party was deprived of the opportunity to present his or her claim or defense to the court, that is, where he or she was kept in ignorance or in some other manner, other than from his or her own conduct, fraudulently prevented from fully participating in the

proceeding." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068 [202 Cal.Rptr. 116].)

"Any fraud is intrinsic if a party has been given notice of the action and has not been prevented from participating therein, that is, if he or she had the opportunity to present his or her case and to protect himself or herself from any mistake or fraud of his or her adversary, but unreasonably neglected to do so. [¶] When a claim of fraud goes to an issue involving the merits of the prior proceeding which the moving party should have guarded against at that time, or if the moving party was guilty of negligence in failing to prevent the fraud or mistake or in contributing thereto, or failed to take advantage of liberal discovery policies to fully investigate his or her claim, any fraud is intrinsic fraud." (*In re Marriage of Stevenot, supra*, 154 Cal.App.3d at p. 1069.) Generally, the introduction of perjured testimony or false documents, or the concealment or suppression of material evidence is deemed intrinsic fraud. (*Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 634 [99 Cal.Rptr. 393].)

■ The fraud alleged in the first amended complaint, misrepresentation of insurance policy limits, is not extrinsic fraud. It did not prevent Pinasco and Main from presenting their case against Canfield in court. A reasonable investigation and use of discovery would have disclosed the true extent of insurance coverage. No cause of action can be stated to set aside the release for extrinsic fraud.

An additional question is whether Home, which was not a party to the release, may set it aside. Home seeks to stand in the shoes of Pinasco and Main as a subrogee. As an underinsured motorist insurer, Home has no right of subrogation. (*Hartford Fire Ins. Co. v. Macri* (1992) 4 Cal.4th 318, 328 [14 Cal.Rptr.2d 813, 842 P.2d 112].) Home's interests are fully protected and limited to the right of reimbursement or credit for the amount the insured receives from the underinsured tortfeasor or his insurer. (Ins. Code, § 11580.2, subd. (p)(5).) Further, Home had no legal obligation to pay underinsured motorist benefits until Pinasco and Main received payment of the limits of Canfield's policy. (Ins. Code, § 11580.2, subd. (p)(3).)

Home contends *Marci* does not apply because the limits of Canfield's policy were not paid out and public policy requires permitting subrogation in this case. Home argues it made the payment to avoid a bad faith claim. While equitable subrogation is not available to one who acts as a volunteer in making the payment, courts have liberalized their interpretation of the interest the payment is made to protect, and an insurer who pays a claim for which it is not legally responsible may be entitled to equitable subrogation. (See *State Farm Fire & Casualty Co. v. East Bay Municipal Utility Dist.*

(1997) 53 Cal.App.4th 769, 774-779 [62 Cal.Rptr.2d 72].) Courts, however, have been reluctant to apply equitable subrogation in the underinsured motorist context. (*Mercury Ins. Co. v. Enterprise Rent-A-Car Co.* (2000) 80 Cal.App.4th 41, 50 [95 Cal.Rptr.2d 222].) Since we determine Home cannot state a cause of action to set aside the release for extrinsic fraud, we need not determine whether Home's payment made it a volunteer ineligible for subrogation.

The alleged misrepresentation about the available policy limits was the basis for all of Home's claims, either as the act of fraud or as grounds to invalidate the release, and thus open the door to a subrogation action. Because the alleged misrepresentation was absolutely privileged and did not constitute extrinsic fraud, the court did not err in sustaining the demurrer without leave to amend and dismissing the lawsuit.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Callahan, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 22, 2002. George, C. J., and Baxter, J., did not participate therein.