Filed 3/24/15  Marriage of Vangelisti CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of PAUL and HA LE VANGELISTI. | H039907<br>(Santa Clara County<br>Super. Ct. No. 1-09-FL151997) |
| PAUL VANGELISTI,<br><br>        Appellant,<br><br>    v.<br><br>HA LE VANGELISTI,<br><br>        Respondent. | ORDER MODIFYING OPINION<br>AND DENYING PETITION FOR<br>REHEARING |

BY THE COURT:

It is ordered that the opinion filed herein on February 24, 2015, be modified as follows:

On page 7, at the end of the second full paragraph ending with "around 10:00 p.m." insert the following footnote:

"The emergency screener's report, if any, is not included in the record. Regardless, father does not explain why he failed to further investigate why the emergency screener recommended maintaining the status quo as opposed to granting him sole custody.  Presumably the screener was available for questioning by the parties and, at that time, the screener had to have been aware that what daughter said in the screening interview was different from what she had told father as set forth in father's supporting declaration.  While father may not have known that daughter had been coerced by

mother, he did know that his efforts to obtain sole custody were unsuccessful and it was incumbent on him to further explore the reasons why or explain his failure to do so."

On page 7, in the first sentence of the final paragraph, insert the phrase "or should have known" following the words "father knew," so that the first sentence now reads:

"At that point in time, father knew or should have known there was a discrepancy between what daughter told him and what she told the screener."

There is no change in judgment. The petition for rehearing is denied.

Dated:_____          _____
                                                              Premo, J.


_____          _____
            Rushing, P.J.                                      Elia, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of PAUL and HA LE VANGELISTI. | H039907<br>(Santa Clara County<br>Super. Ct. No. 1-09-FL151997) |
| PAUL VANGELISTI,<br><br>        Appellant,<br><br>        v.<br><br>HA LE VANGELISTI,<br><br>        Respondent. | |

Appellant Paul Vangelisti (father) and respondent Ha Le Vangelisti (mother) were married in 1997 and separated in 2005.[1] They share custody of their daughter (daughter), who was born in January 2001. In February 2013, father brought a motion seeking to set aside the existing custody orders on the grounds that those orders were obtained through extrinsic fraud, specifically that mother had coerced daughter to lie during an emergency screening in 2011. The trial court appointed minor's counsel to investigate father's allegations. At a subsequent hearing, minor's counsel advised the trial court daughter confirmed that mother had pressured her to not be "completely candid" in the screening and, in one instance, daughter did not tell the complete truth to the screener. Daughter also told minor's counsel she was happy with the current custody arrangements and did

---

[1] The marriage was dissolved on December 2, 2010, with the court reserving jurisdiction over all other matters.

not want it to change. Father asked that the court set a full hearing and call daughter to testify. After minor's counsel indicated it would not be in daughter's best interest to testify in front of her parents, the trial court denied father's request and subsequently denied father's motion.

On appeal, father argues the trial court erred in denying his motion because he was "kept in ignorance of material facts and was fraudulently prevented from fully presenting his case based upon [mother]'s coercion" of their daughter. Alternatively, he argues the trial court abused its discretion in denying his request for a full hearing on the matter in which daughter would testify about mother's coercion. We disagree with both of father's arguments and will affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Father and mother were married in November 1997 and separated in 2005. Daughter was born in 2001. Father filed a petition for dissolution of marriage in 2009 in which he sought joint legal and physical custody of daughter. A status-only judgment of dissolution was entered in December 2010, with the court reserving jurisdiction over custody and all other issues.

In November 2010, father moved for an order granting him full legal and physical custody of daughter, rather than joint custody. In his supporting declaration, father said daughter had told him that mother had taken her to a "nightclub . . . until 1:30 a.m. where people drink alcohol . . . , dance and sing karaoke." Daughter also told father of "midnight stops at a Vietnamese restaurant in East San Jose that they go to . . . eat noodle soup." Father was concerned this put daughter at risk of "possible foul play or attacks." He also alleged that mother was physically and emotionally abusive towards daughter, was not providing her adequate care, nutrition or an adequate place to live.

Mother's responsive declaration denied father's allegations and accused him of physical and emotional abuse toward her and daughter during their marriage. As to the "nightclub" incident, mother stated that she and daughter were invited to a friend's

anniversary party at a restaurant. Other families with children were present and although there was dancing and karaoke, there was no alcohol at their table. Mother claims they left the restaurant at "about 11:00 p.m." not 1:30 a.m.

The trial court ordered an emergency screening, which took place on January 13, 2011. After interviewing daughter, father and mother, the screener recommended the parties agree to joint legal and physical custody with an approximately 50/50 timeshare. Father and mother accepted the recommendation.

In December 2012, father filed a motion for appointment of minor's counsel. In a supporting declaration, father said daughter recently informed him that mother coerced her to lie during the January 2011 emergency screening by telling her if she "said anything negative to the screener about her mother, the Court would take her away, and she would not be able to see her mother." Daughter said "she was scared and persuaded [*sic*] to follow her mother's advice." Father stated that if daughter had told the truth, the screener would not have recommended and he would not have agreed to a 50/50 timeshare. Mother opposed the request, declaring it was "nothing more than an attempt to relitigate custody and visitation."

At the hearing on father's motion, the trial court suggested that daughter could perhaps be referred to a "teen orientation" upon either party filing a motion to modify custody, after which daughter could speak to a mediator or, alternatively, meet with the judge to answer questions prepared by counsel. The trial court reserved the issue of appointing minor's counsel because it was "not convinced [it] is appropriate at this time."

In February 2013, father filed a request to modify custody and set aside custody orders, pursuant to Code of Civil Procedure section 473, subdivision (b) and Family Code section 2122, subdivision (a). In his supporting declaration, father repeated his claims that mother induced daughter to lie during the 2011 emergency screening. Father asked that the trial court interview daughter, with counsel for both parties present, and that counsel be permitted to propose questions for the court to ask daughter in this interview.

3

At the hearing, the trial court decided to appoint minor's counsel for daughter, who could "spend a lot more time than I can with her and can actually go out to the houses." The trial court set a review hearing for April 18 (subsequently continued to May 9 at the request of minor's counsel) to allow time for counsel to be appointed and meet with father, mother and daughter.

At the May 9 review hearing, minor's counsel informed the court that, due to the amount of time that had elapsed since the 2011 screening, daughter's recollection of what occurred back then was "somewhat vague." Daughter recalled the screening, but could not remember all of the things she said to the screener or what the screener asked her. Daughter did say that, before the screening, mother "express[ed] a concern that if [daughter] was completely candid, that she feared that she would lose custody." Daughter said that "concerned her and that she recalled one instance in where [*sic*] she didn't tell the complete truth on one thing to the screener, just one item." When asked what that was, minor's counsel responded, "That one thing was whether or not she had stayed up extra late with mother at a restaurant where there was a party going on. [Daughter] indicated to me that instead of telling the screener that on that one occasion they stayed up really late, she told the screener that it just went until about 10 o'clock." Besides that one incident, daughter did not recall telling the screener "anything else that was false or not completely truthful."

Minor's counsel continued, saying she talked to daughter "about telling the truth, and she understands that she needs to tell the truth at all times." At the time of the screening, daughter "was younger and she felt pressured that mom had conveyed to her about losing contact with mom, and I talked to [daughter] about how . . . that's not her responsibility, that she needs to tell the truth, and she understood that." Daughter "understands the parenting plan very well, and she's comfortable with it, and she doesn't want any changes in it currently."

4

Father then requested a full hearing, with daughter testifying. When asked what daughter might testify to which was different from what minor's counsel had said, father's counsel indicated he could only speculate, since he had never interviewed daughter.

The trial court asked minor's counsel for her opinion on whether it would be in daughter's best interest to testify in front of her parents. Minor's counsel said, "based on my interviews with [daughter], . . . she does not want to be in the middle of her parents. . . . . I believe it would put undue emotional pressure on her to put her on a stand in front of her parents and have her asked questions and answer questions regarding that screening."

The trial court said it was uncertain how the situation would change if daughter testified, and expressed its concerns that "both parents are more interested in fighting with each other and are like two pitbulls with [daughter] as the chew toy." The trial court was not persuaded that it was in daughter's best interest to testify, and consequently denied father's motion.

## II. DISCUSSION

### A. *Standard of review*

A motion to set aside a judgment for fraud or mistake is addressed to the sound discretion of the trial court and will not be reversed on appeal absent a clear showing that discretion was abused. (*In re Marriage of Grissom* (1994) 30 Cal.App.4th 40, 46.)

### B. *The trial court did not abuse its discretion in denying father's motion*

Although father's motion was brought below pursuant to Code of Civil Procedure section 473, subdivision (b) and Family Code section 2122, subdivision (a), he now argues that his motion should have been granted under the trial court's inherent equitable authority. He contends there was extrinsic fraud which deprived him of a fair opportunity to fully present his case.

5

The California Supreme Court has instructed that "[u]nder certain circumstances a court, sitting in equity, can set aside or modify a valid final judgment." (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 470 (*Kulchar*).) "A final judgment may be set aside by a court if it has been established that extrinsic factors have prevented one party to the litigation from presenting his or her case. [Citation.] The grounds for such equitable relief are commonly stated as being extrinsic fraud or mistake. However, those terms are given a broad meaning and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." (*In re Marriage of Park* (1980) 27 Cal.3d 337, 342.)

In ruling upon motions to set aside the judgment on the ground of fraud, courts distinguish extrinsic fraud from intrinsic fraud. " 'Fraud is extrinsic where the defrauded party was deprived of the opportunity to present his or her claim or defense to the court, that is, where he or she was kept in ignorance or in some other manner, other than from his or her own conduct, fraudulently prevented from fully participating in the proceeding.' [Citation.] [¶] 'Any fraud is intrinsic if a party has been given notice of the action and has not been prevented from participating therein, that is, if he or she had the opportunity to present his or her case and to protect himself or herself from any mistake or fraud of his or her adversary, but unreasonably neglected to do so.' " (*Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 26-27 (*Home Ins. Co.*).)

Thus," '[w]hen a claim of fraud goes to an issue involving the merits of the prior proceeding which the moving party should have guarded against at that time, or if the moving party was guilty of negligence in failing to prevent the fraud or mistake or in contributing thereto, . . . any fraud is intrinsic fraud.' [Citation.] Generally, . . . the concealment or suppression of material evidence is deemed intrinsic fraud." (*Home Ins. Co.*, *supra*, 96 Cal.App.4th at p. 27.) Intrinsic fraud is not a valid ground for setting aside a judgment. (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1069-1070.) " 'The rule is that fraud internal to the adversary proceeding, such as perjury committed

6

during trial or error or mistake during the trial, is intrinsic and is not a basis for relief.' " (*In re Marriage of Brennan* (1981) 124 Cal.App.3d 598, 604.)

"Whether the case involves intrinsic or extrinsic fraud or mistake is not determined abstractly. 'It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his [or her] evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he [or she] was deprived of a fair opportunity fully to present his case.' " (*Kulchar*, *supra*, 1 Cal.3d at p. 473.)

Father's claim of extrinsic fraud is that he was "kept in ignorance of the material fact that Mother had coached [daughter] to lie to the Emergency Screener." We disagree that this is an example of extrinsic fraud. Father's November 2010 motion to obtain full legal and physical custody was based on his learning from daughter that mother had taken her to a party at a nightclub one evening at which alcohol was served, there was dancing and karaoke. He also claimed in his supporting declaration that mother kept daughter at this party until 1:30 a.m. In her declaration, mother admitted she and daughter went to a party, but at a restaurant, rather than a nightclub and that they left at 11:00 p.m. In her interview with the emergency screener, daughter confirmed most of the details of this event, but said that she and mother went home at around 10:00 p.m.

At that point in time, father knew there was a discrepancy between what daughter told him and what she told the screener. He was not prevented from fully presenting his case, and could have undertaken some further investigation into the event in question. He chose not to and instead agreed to a continuation of joint custody. Simply because he subsequently learned that mother had influenced daughter to not be entirely truthful with the screener does not transform this into a case of extrinsic fraud. The conflict between daughter's two reports of what time she and mother left the party was apparent to everyone involved and was internal to the adversary proceeding. There was no basis for the trial court to set aside its prior custody orders.

7

C.      *The trial court did not abuse its discretion in declining to have a full hearing*

Father also argues the trial court abused its discretion in not ordering a "full and fair" hearing on his claims and improperly allowed minor's counsel's unsworn statements into evidence.

The record does not show that father objected to the statements made by minor's counsel at the hearing on his motion.[2]  In the absence of a record showing objections to evidence, we cannot consider them preserved for appellate review.  (Evid. Code, § 353, subd. (a).)

Even if those objections were made and thus preserved, however, father cannot establish prejudice.  There was no evidence before the trial court indicating how the custody arrangements would change if an evidentiary hearing, in which daughter would testify on the stand in front of her parents, were held.  Based on the assessment of minor's counsel[3] that requiring daughter to testify would not be in her best interests, the trial court acted within its discretion in denying father's request for a hearing.

## III.   DISPOSITION

The trial court's order is affirmed.  Respondent is entitled to her costs on appeal.

---

[2] In fact, father relies on at least some of the statements made by minor's counsel to support his claim that daughter was coerced to lie to the emergency screener.

[3] We think it worth noting that minor's counsel was appointed at father's request.

8

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.