Filed 6/14/23  Chang v. Farmers Ins. Co. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WILD CHANG et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>FARMERS INSURANCE COMPANY, INC. et al.,<br><br>    Defendants and Respondents. | B317518<br><br>(Los Angeles County Super. Ct. No. BC650876) |

APPEAL from an order of the Superior Court of Los Angeles County.  Teresa A. Beaudet, Judge.  Affirmed.

Wild Chang, in pro. per., Kenneth Lo, in pro. per., Wild Chang, Jr., in pro. per., for Plaintiffs and Appellants.

Woolls Peer Dollinger & Scher, Gregory B. Scher and H. Douglas Galt for Defendant and Respondent Woolls Peer Dollinger & Scher.

_____

## INTRODUCTION

Plaintiffs Wild Chang, Kenneth Lo, and Wild Chang, Jr. (Chang Jr.) sued the law firm Woolls Peer Dollinger & Scher (Woolls Peer), alleging Woolls Peer engaged in fraud while representing other defendants in this consolidated litigation. Woolls Peer filed a special motion to strike under Code of Civil Procedure section 425.16, which the trial court granted. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

These consolidated actions arise out of an insurance claim that plaintiffs submitted for losses caused by a fire in their home on December 16, 2014. On February 16, 2017, plaintiffs Chang and Lo filed their original complaint against Farmers Insurance Company, Inc. (Farmers), Fire Insurance Exchange, Stacy Chern Insurance Agency, and Stacy Chern. On August 21, 2017, Chang and Lo filed a second amended complaint that substituted Farmers Insurance Group of Companies for Farmers. On January 26, 2018, plaintiffs voluntarily dismissed the action with prejudice as to Farmers Insurance Group of Companies.

On January 28, 2021, plaintiffs Chang, Lo, and Chang Jr. filed a second action against Farmers, Fire Insurance Exchange, Stacy Chern, and Woolls Peer. The actions were consolidated and the operative third amended complaint deemed filed on July 22, 2021.

In the third amended complaint, plaintiffs alleged Farmers and Fire Insurance Exchange, acting in bad faith, made a grossly deficient settlement offer for the claim plaintiffs submitted for

their fire loss.  Plaintiffs also alleged Farmers, Fire Insurance Exchange, and Chern engaged in a fraudulent scheme to "convert the 'insurance'" plaintiffs allegedly purchased from Farmers "into a mere 'self-owned membership' in an unincorporated association, i.e., [Fire Insurance Exchange] . . . in order to insulate [Farmers] and its agents from all of the legal liabilities arising from the deceptive and non-conforming insurance sold to [p]laintiffs."

Woolls Peer is counsel of record for Farmers, Fire Insurance Exchange, and Chern in the consolidated actions. Plaintiffs alleged Woolls Peer participated in the alleged fraud through actions taken in the litigation, including by representing Fire Insurance Exchange, which plaintiffs characterize as a "non-party"; moving to dismiss Farmers on the ground that Farmers was not the insurer; and filing various other motions.  Plaintiffs alleged that Woolls Peer made false representations in court filings and in communications with opposing counsel and that Woolls Peer failed to conduct sufficient due diligence before agreeing to represent Farmers and Fire Insurance Exchange. Plaintiffs contended Woolls Peer's litigation activities constituted a "form of malicious prosecution."

Plaintiffs purported to assert claims against all defendants for fraud, unfair business practices, professional negligence, and emotional distress.  Plaintiffs also asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing, but plaintiffs did not allege they entered into any contract with Woolls Peer, and it is therefore unclear whether plaintiffs sought to assert these claims against Woolls Peer.

Woolls Peer filed a special motion to strike under Code of Civil Procedure section 425.16 (anti-SLAPP motion).  The trial court granted the motion on October 14, 2021.  The court

concluded that the claims were based on activities protected under section 425.16 because they arose out of Woolls Peer's litigation activities and also concluded that plaintiffs had no probability of prevailing because the claims were barred by the litigation privilege.

This appeal followed.

## DISCUSSION

A.   *Code of Civil Procedure Section 425.16 and Standard of Review*

Under Code of Civil Procedure section 425.16,[1] commonly known as the anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition . . . shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

In ruling on an anti-SLAPP motion, the court engages in a two-step process.  "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384, accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)  "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal

---

[1]    All further undesignated statutory references are to the Code of Civil Procedure.

4

merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, italics omitted.)

We review an order granting an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

B.    *Protected Activity*

We first consider whether the claims against Woolls Peers "arise[] from any act of that person in furtherance of the person's right of petition." (§ 425.16, subd. (b)(1).) An "'act in furtherance of a person's right of petition' . . . includes: (1) any written or oral statement or writing made before a . . . judicial proceeding . . . , [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body," among other things. (§ 425.16, subd. (e).)

"'A cause of action "arising from" defendant's litigation activity'" falls within those categories. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) The protected acts "include[] communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation." (*Ibid.*; see *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388 ["[t]he anti-SLAPP statutes protect not only the litigants, but also their attorneys' litigation-related statements"].) "*[A]ll* communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld, LLP* (2017) 18 Cal.App.5th 95, 113, quotation marks omitted.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at pp. 1062-1063.) This standard is met "only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*), quotation marks omitted; accord, *Park*, at p. 1060.) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Wilson*, at p. 884; accord, *Park*, at p. 1063.) "'If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute.'" (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594 (*Area 51*).)

Here, the claims against Woolls Peer arose solely out of the firm's litigation activity. Plaintiffs alleged Woolls Peer attempted to "'judicialize'" and "perpetuate" an alleged "fraudulent conversion" scheme through "malicious" and "untenable" "litigation maneuvers." The alleged wrongful acts include filing a demurrer, a special motion to strike, a motion to dismiss, motions for protective orders, and motions for sanctions, and serving inadequate discovery responses. Plaintiffs alleged Woolls Peer made false statements in those documents, including false representations that the insurer was Fire Insurance Exchange, not Farmers. Plaintiffs alleged the false representations and other actions gave rise to "wrongful rulings and sanctions"

against plaintiffs and led plaintiffs' former counsel to voluntarily dismiss Farmers as a party.

Plaintiffs did not allege any wrongful acts by Woolls Peer other than litigation activities. For example, plaintiffs did not allege Woolls Peer was involved in handling the claim or in selling plaintiffs any insurance. Since no other wrongful acts were alleged, Woolls Peer's litigation activities necessarily constituted the "'core injury-producing conduct upon which the plaintiff's claim[s] [were] premised.'" (*Area 51, supra,* 20 Cal.App.5th at p. 594.)

In sum, the trial court correctly concluded plaintiffs' claims against Woolls Peer arose out of activity protected under section 425.16.

C.    *Probability of Success on the Merits*

Because Woolls Peer met its initial burden of showing that plaintiffs' claims arose from protected activity, the burden shifted to plaintiffs to "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 476, italics and quotation marks omitted; accord, *Taus v. Loftus* (2007) 40 Cal.4th 683, 714-715.) In determining whether plaintiffs have met this burden, we consider "the pleadings[] and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) We do not, however, "weigh [defendant's] evidence against the plaintiff's, in terms of either credibility or persuasiveness. Rather, the defendant's evidence is considered with a view

7

toward whether it defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element." (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585; accord, *Taus v. Loftus, supra*, 40 Cal.4th at pp. 714-715.)

Here, the trial court correctly concluded plaintiffs' claims against Woolls Peer are barred by the litigation privilege codified in Civil Code section 47, subdivision (b). "[T]he privilege bars a civil action for damages for communications made '[i]n any . . . judicial proceeding,'" subject to certain exceptions set forth in the statute. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360.) "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action. [Citation.] The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241, quotation marks omitted.) The litigation privilege is "interpreted expansively." (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 662.) "Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.)

The privilege bars all tort claims based on such communications, except malicious prosecution. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 209.) This includes claims for fraud, intentional infliction of emotional distress, and negligence (among other torts). (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215; see *Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1141

8

["the litigation privilege extends to fraudulent statements, even when made to a court, if they were made in furtherance of litigation"]; see also *Boston v. Nelson* (1991) 227 Cal.App.3d 1502, 1507 [intentional misstatements and misleading statements by attorney to trial court were privileged because they were made in furtherance of litigation].)  It also bars claims for violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) brought by a party against opposing counsel based on litigation-related communications.  (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1203.)

Here, plaintiffs purported to assert claims for fraud, unfair business practices under Business and Professions Code section 17200 et seq., professional negligence, and intentional infliction of emotional distress against Woolls Peer.[2]  As discussed, the only alleged bases for these claims were communications made during litigation.  The alleged wrongful acts included misrepresentations made in motions filed with the court and in communications with opposing counsel.  All the alleged wrongful acts fell within the scope of the litigation privilege.

---

[2]     The third amended complaint also asserted claims for breach of contract and breach of the covenant of good faith and fair dealing, but it does not appear these claims were asserted against Woolls Peer since there was no allegation that plaintiffs entered into any contract with Woolls Peer.  To the extent plaintiffs purported to assert these claims against Woolls Peer, they have not shown any probability of prevailing since they presented no evidence that plaintiffs entered into any contract with the law firm.

Plaintiffs contended Woolls Peer's actions constituted "malicious prosecution," but plaintiffs did not and could not state a claim of malicious prosecution against Woolls Peer. To establish a claim for malicious prosecution, a plaintiff must plead and prove (1) the defendant had initiated a prior action against the plaintiff; (2) the plaintiff had prevailed on the merits in the prior action; and (3) the prior action was brought without probable cause and with malice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.) Plaintiffs did not allege that Woolls Peer initiated any prior lawsuit against them. Contrary to plaintiffs' argument, the law does not recognize a cause of action for "malicious defense." (*Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1422.)

Plaintiffs do not argue that any exception to the litigation privilege applies, nor could they do so. Civil Code section 47, subdivision (b)(3), provides an exception for "any communication made in a judicial proceeding knowingly concealing the existence of an insurance policy or policies." Plaintiffs did not allege Woolls Peer concealed the existence of any insurance policy; rather, plaintiffs alleged the firm misrepresented the *identity* of the insuring party.

Civil Code section 47, subdivision (b)(3), was enacted to "overturn the decision in *California Dredging Company v. Insurance Company of North America* [(1993) 22 Cal.Rptr.2d 461, review granted and opinion superseded (*California Dredging*)]." (Stats. 1994, ch. 700, § 1 [SB No. 1457]; see also *Morales v. Cooperative of American Physicians, Inc.* (9th Cir. 1999) 180 F.3d 1060, 1063 [analyzing the legislative history].) *California Dredging* arose out of an earlier federal court action in which a contractor had sued a manufacturer of defective pipes. In

10

discovery responses, the manufacturer falsely represented it had only a single $100,000 insurance policy, when in fact it had several additional policies, including $5 million in excess coverage. Relying on the misrepresentations, the contractor settled for $100,000. The contractor then sued the manufacturer and others for fraudulently concealing the existence of additional policies. The Court of Appeal held the action was barred by the litigation privilege. (*California Dredging,* at p. 465.) In response, the legislature enacted Civil Code section 47, subdivision (b)(3). (Stats. 1994, ch. 700, § 1.)

Courts have interpreted the exception narrowly, holding Civil Code section 47, subdivision (b)(3), applies only when a defendant conceals the *existence* of coverage from a plaintiff. (*Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 26.) It does not apply, for example, when the defendant conceals *the terms* of a policy. (*Ibid.*) Here, plaintiffs did not allege Woolls Peer concealed the existence of any policy from plaintiffs, and the exception thus does not apply.

In sum, the trial court correctly concluded that plaintiffs had not established a probability of prevailing on their claims against Woolls Peer.

## DISPOSITION

The order of the trial court is affirmed.  Wools Peer shall recover its costs on appeal.

ESCALANTE, J.[*]

We concur:

SEGAL, Acting P. J.

FEUER, J.

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.